465 F.2d 1169
 Roy HUBBARD et al., Plaintiffs-Appellees, James S. Collins,
Intervenor-Appellee,
v.
Jim AMMERMAN, Defendant-Appellant, and Lonnie E. Henry,
Clerk of the Court of Civil Appeals for the 6th
Supreme Judicial District of Texas,
Defendant-Appellant.
 No. 71-2298.
 United States Court of Appeals,
 Fifth Circuit.
 Sept. 6, 1972.
Rehearing and Rehearing En Banc Denied Oct. 31, 1972.
 
 William M. Huffman, Marshall, Tex., for Jim Ammerman.
 Crawford C. Martin, Atty. Gen. of Texas, Austin C. Bray, Jr. Asst. Atty. Gen., Austin, Tex., for Lonnie E. Henry.
 Franklin Jones, Sr., Marshall, Tex., Paul S. Colley, Henderson, Tex., Earl Sharp, Longview, Tex., for plaintiffs-appellees.
 Sam R. Moseley, Marshall, Tex., for other interested parties.
 Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.
 COLEMAN, Circuit Judge:
 
 
 1
 This litigation began in the 71st Judicial District of Texas as a local election contest to determine who had received the majority of the votes legally cast in a Democratic primary for the nomination of a candidate for County Judge in Harrison County, Texas.
 
 
 2
 In the manner hereinafter described, the controversy got into the United States District Court for the Eastern District of Texas. The result was a head-on collision between that Court and the Texas Court of Civil Appeals, with the Federal District Court ultimately deciding this local contest.
 
 
 3
 For reasons presently to appear, we are of the opinion that the District Court should not have assumed jurisdiction of this controversy.
 
 
 4
 Its judgment is reversed. The case is remanded with directions that the District Court shall vacate its judgment, dissolve its permanent injunction, and dismiss the case from its docket.
 
 
 5
 * The Controversy
 
 
 6
 In the Democratic Party primary to select a nominee for the office of County Judge of Harrison County, Texas, held May 2, 1970, there were two candidates. One was Jim Ammerman, the incumbent. The other was James S. Collins. After canvassing the election returns, the County Democratic Executive Committee found that Ammerman had received 4,073 votes and Collins had received 4,057 votes. Ammerman, therefore was certified as the Democratic nominee for County Judge.
 
 
 7
 As authorized by Article 13.30 of the Texas Election Code, V.A.T.S.,[1] Collins instituted an election contest in the 71st Judicial District of Harrison County, praying that the certificate issued to Ammerman be set aside and that Collins be declared the Democratic nominee. Collins alleged that absentee ballots had been illegally cast by mail for his opponent, that other spurious ballots had likewise been cast. This Ammerman denied and counterclaimed that a number of illegal ballots had been cast for Collins by non-residents of the precincts in which they had been allowed to vote.
 
 
 8
 *****
 
 
 9
 * * *
 
 
 10
 *****
 
 
 11
 * * *
 
 
 12
 *****
 
 
 13
 * * *
 
 
 14
 Subsequently, Collins amended his pleadings to request that a new primary be ordered, asserting that so many illegal votes had been cast that the election should be declared void.
 
 
 15
 Ammerman contended that under the applicable Texas statute the Court had jurisdiction only to decide the true result of the election as determined by the votes legally cast, a position supported by the prior decisions in Nesbitt v. Coburn, 143 S.W.2d 229 (1940) and Scruggs v. Perkins, 233 S.W.2d 913 (1950), decisions of the Texas Court of Civil Appeals, which has final jurisdiction of such matters in Texas, Article 13.30(12), Texas Election Code.
 
 
 16
 After an extended trial which generated a testimonial transcript in excess of 4,000 pages, and despite the appellate decisions just cited, the Texas trial court, on July 27, 1970, entered its judgment setting aside the May 2 primary and ordering a new primary be held for the selection of a Democratic nominee for the office of County Judge.
 
 
 17
 The next step, [Article 13.30(12), Texas Election Code] was an appeal to the Texas Court of Civil Appeals.
 
 
 18
 Collins had insisted in the District Court that a new election be ordered, but he argued on appeal that he should have been declared the nominee.
 
 
 19
 Ammerman likewise appealed, contending that the local Texas Court should have decided the winner and was without authority to order a new primary.
 
 
 20
 The appeals were duly docketed in the Texas Court of Civil Appeals at Texarkana.
 
 
 21
 To this point, the case was nothing more than an ordinary, often encountered, contest to decide who had received a majority of the legally cast votes for a nomination in a County Democratic primary.
 
 
 22
 The matter, however, was not allowed to follow the usual course through the Texas state court system.
 
 
 23
 While the appeals filed by both Collins and Ammerman were pending in the duly designated Texas court of last resort, Roy Hubbard and numerous others, who had not been candidates in the primary, who had no claim to the nomination, on September 10, 1970, filed a complaint in the United States District Court for the Eastern District of Texas, at Marshall.
 
 
 24
 Some of the complainants if not all of them, had sought to intervene in the Texas District Court case but their intervention had been denied. From this action they did not appeal to the Texas Court of Civil Appeals.
 
 
 25
 The federal complaint alleged that the plaintiffs had voted in the primary and had voted for James S. Collins. Asserting a class action on behalf of themselves and all others who had voted for Collins, contending that they were seeking to enforce their rights under the Voting Rights Act of 1964 and 1965, and seeking "to protect their rights of suffrage and of having their votes counted under the provisions of 42 U.S.C.A., Sec. 1983(1)", these voters attached a copy of the judgment of the District Court of Harrison County ordering a new election, as well as a transcript of the official proceedings in that Court. It was charged that the ballot boxes had been stuffed with the absentee ballots of persons [Negroes] who, in fact, had not voted those ballots. Further, ballots had been illegally cast where in the applications for the ballot contained no signature and likewise constituted ballot box stuffing. It was claimed that a majority of all the allegedly illegal votes were cast by or in the name of Negroes, and that this "action of the supporters of the defendant Ammerman" constituted preying upon the Negro race, and the illiterates thereof, so as to deprive them of the right to cast a free ballot, on account of their race and color, in contravention of the Voting Rights Acts and the Fifteenth Amendment to the Constitution. It was further alleged that these ballots had been cast in violation of Texas law, that in the state court trial Ammerman had sought to have the ballots of 152 voters declared illegal because they had voted in a precinct where they did not reside, and that to permit the certification of Ammerman as the Democratic nominee would dilute the vote of the complainants and all others who voted for Collins, in violation of the "one person-one vote" rule. It was ultimately alleged that Ammerman was maneuvering to delay the appeal to the Texas Court of Civil Appeals beyond the date when it would be possible to print the general election ballots, thus mooting the contest. These allegations will be subjected to more extensive description infra.
 
 
 26
 It was prayed that the appearance of Jim Ammerman's name on the general election ballot as the nominee of the Democratic Party be enjoined by the federal district court, that a new primary election for the nomination of county judge be ordered, and that no general election for the office of county judge be allowed until such primary could be completed.
 
 
 27
 The District Court set a hearing for September 25 as to preliminary injunctive and mandatory relief.
 
 
 28
 Collins was not named as a party plaintiff or defendant to the federal court suit, but Ammerman was made a defendant. Ammerman filed a motion to dismiss the complaint on the ground that on its face the action (1) had been prematurely instituted; that (2) it raised no substantial federal question; that (3) the judgment of the Texas district court was not a final judgment because of the pending appeals to the Texas Court of Civil Appeals; that (4) in his Texas appeal James S. Collins had contended that a judgment should be rendered declaring him to be the nominee; that (5) the defendant Ammerman had contended in the appellate court that the district court erred in ordering a new election; that, (6) the complaint constituted an effort to have the United States District Court review, as an appellate court, the action of the state court with reference to the election contest; and that (7) the district court was without jurisdiction of the cause. Ammerman also filed an answer reiterating the factual basis upon which it was contended that he had won the primary.
 
 
 29
 On September 29, 1970, the United States District Court denied the motion to dismiss and granted a preliminary injunction, saying that from an examination of the opinion of the state district court and from evidence presented at the hearing, "it appears that there is the possibility that fraud has so permeated the Democratic Party for the office of County Judge of Harrison County, Texas, that the votes of persons who cast legal ballots may have been diluted. * * * * There is also a distinct posisibility that a decision [of the case] on an appeal that has been taken to the Court of Civil Appeals may not be disposed of until after said Cause has become moot". [Emphasis added].
 
 
 30
 On these premises, the United States District Court did not order a new primary but, until further ordered, unconditionally enjoined the appearance of Ammerman's name on the general election ballot as a Democratic nominee, enjoined the Harrison County Election Board from providing any election supplies for use in the general election for county judge, and enjoined the holding of a general election for the office of county judge. Moreover, "every voter and elector participating in the general election to be held in November, 1970, (although not parties to the litigation) were enjoined from writing in a name for the office of county judge on the general election ballot". Additionally, "all election clerks and judges" were enjoined from counting or returning such write-in votes. A copy of the order granting the preliminary injunction will be annexed to this opinion as Appendix A.
 
 
 31
 On October 6, 1970, unaware of the federal district court injunction, the Texas Court of Civil Appeals heard oral argument and, the same day, decided the appeals taken to that Court by Collins and Ammerman [Collins v. Ammerman, 459 S.W.2d 891]. The Texas appellate court recited the history of the litigation and held that the state trial court should have decided which ballots were legal, which were illegal, who received the most of the votes legally cast, and who had been nominated. It further held that it could not, on the record before it, decide the case on the merits because the state district court had erroneously denied Ammerman the opportunity to introduce evidence of certain votes cast illegally against him.
 
 
 32
 The case was remanded to the state district court with directions [on the basis of the record already compiled and on such additional evidence as might be necessary] to decide the contest before October 13, 1970. The Court of Civil Appeals specifically directed that no petition for rehearing would be entertained, that the mandate of the court would issue instanter, and that the Clerk should without delay furnish the trial court with a copy of the opinion, etc.
 
 
 33
 The trial court proceeded immediately to retry the case and six days after the decision of the Court of Civil Appeals entered judgment that Collins had won the Democratic primary for county judge by a margin of fifteen votes. Acting in accordance with the mandate of the Court of Civil Appeals the district court also entered judgment against Collins and his sureties for the costs of the first trial. Ammerman was taxed with the costs of the second trial.
 
 
 34
 Ammerman then appealed this judgment [dated October 12, 1970]. Collins also appealed that part of the judgment which had taxed him with the cost of the first trial as directed by the Texas Court of Civil Appeals.
 
 
 35
 Then came a period in which the United States District Court took no action, the Texas Court of Civil Appeals rendered no decision, the date of the general election passed, there was no election for county judge, and matters remained status quo until March 9, 1971.
 
 
 36
 On that date [Ammerman v. Collins, 464 S.W.2d 184], the Texas Court of Civil Appeals, in a formal opinion, stated that at the time of its prior decision it had not been apprised of the federal injunction. It then proceeded to set aside the state district court judgment of October 12 on the ground that the United States District Court had acquired or assumed jurisdiction over the controversy by its preliminary injunction of September 29 and that, in any event, under Texas law, the contest not having been finally decided before the general election, the case was moot. The Texas district court was directed to dismiss the contested election case from its docket.
 
 
 37
 The March, 1971, decision of the Court of Civil Appeals started the wheels turning again at the United States Courthouse. Collins, the contestant in the state courts, moved to be allowed to intervene in the Federal Court case as one having a vital interest in the subject matter of the case, both as a voter and as the legal nominee for the office of county judge. March 19, 1971, the motion was granted and Collins filed his plea of intervention the same day.
 
 
 38
 We consider it unnecessary to detail the other skirmishing and maneuvering except to say that the case was sent to trial on the merits in the Federal District Court on April 21, 1971.
 
 
 39
 On May 27, 1971, the District Court filed findings of fact and conclusions of law, followed by a sweeping injunction.
 
 
 40
 It will be remembered that a total of 8,130 votes were purportedly cast in the Democratic primary. Adopting the findings of the state district court, the United States District Judge held that fifty-five absentee ballots were illegally cast, all by Negroes except six; that at least two of these Negroes upon going to the polls to vote in person were denied the right to vote because they, unknown to them, had been voted by absentee ballot; that the casting of absentee ballots in this fashion constituted an infringement on and a discrimination against the right of these Negroes to vote by reason of their race and color; that this operated to "dilute the vote of each elector who voted for Collins in such a way as to cause Ammerman to be the apparent winner of the primary election".
 
 
 41
 In paragraph 35, the District Court found as a fact "that the Court of Civil Appeals for the Sixth Supreme Judicial District of Texas, at Texarkana, made a studied and deliberate attempt to avoid deciding the election contest case on its merits prior to the date of the holding of the General Election on November 3, 1970, so as to be able to declare the election contest moot, and thus avoid deciding the case on its merits".
 
 
 42
 It was held, as a matter of law, that the mootness doctrine, a part of the law of Texas by enunciation in Polk v. Davidson, 145 Tex. 200, 196 S.W.2d 632 (1946), and subsequent cases as applied by the Texas Court of Civil Appeals, is unconstitutional; that members of the Negro race who did not apply for absentee ballots and who had absentee ballots voted in their name by other persons were denied their right to vote and the same was abridged by state action on account of race; that the district court had the right to order a general election with the name of Collins on the ballot; that the district court in aid of its jurisdiction previously exercised could enjoin the enforcement of the judgment and mandate of the Court of Civil Appeals dismissing the election contest; that because of 42 U.S.C.A., Sec. 1983 the Anti-Injunction Act [28 U.S.C.A. Sec. 2283] did not apply; that since the Court of Civil Appeals did not have jurisdiction to hear the first appeal it did not have jurisdiction to assess costs against Collins; that Collins should be declared the winner of the primary of May 2, 1970. Judgment was accordingly entered, it being directed that no name but that of Collins should be placed on the general election ballot as a candidate for county judge [Transcript, 233]. In other words, the United States District Court, by its judgment, in effect, named Collins as the County Judge of Harrison County.
 
 
 43
 The judgment of the District Court was stayed by this Court, pending appeal.
 
 II
 Some Preliminary Observations
 
 44
 On February 15, 1972, the Supreme Court of the United States decided Roundebush v. Hartke, 405 U.S. 15, 92 S.Ct. 804, 31 L.Ed.2d 1. The case involved a contest (recount) of the certified general election results in the race for United States Senator from Indiana.
 
 
 45
 The Democratic nominee had been certified. In the appropriate state court the Republican nominee filed a timely petition for a recount. In accordance with Indiana law, that Court appointed a three-man recount commission and directed it to begin the recount on December 8. The Democratic nominee then sought, in the United States District Court, to enjoin the recount. A district judge issued a temporary restraining order until the matter could be heard and decided by a three judge United States District Court. The state attorney general intervened. The three-judge district court interlocutorily enjoined the recount, 321 F.Supp. 1370. This was appealed to the Supreme Court.
 
 
 46
 Since the Senate had seated Hartke without prejudice to the outcome of the appeal, the Supreme Court declined to consider the appeal moot. It held that Article 1, Sec. 4 of the United States Constitution specifically empowers the states, in the absence of Congressional enactment, to regulate the conduct of Senatorial elections:
 
 
 47
 "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Place of choosing Senators."
 
 
 48
 Obviously, a recount is simply an election contest and the Supreme Court held that "A recount is an integral part of the Indiana electoral process and is within the ambit of the broad powers delegated to the States by Article 1, Sec. 4".
 
 
 49
 Citing Smiley v. Holm, 285 U.S. 355, 52 S.Ct. 397, 76 L.Ed. 795 (1932) the Supreme Court defined these broad powers:
 
 
 50
 "It cannot be doubted that these comprehensive words embrace authority to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns; in short, to enact numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved." 405 U.S. at 24, 92 S.Ct. at 810.
 
 
 51
 If the States have these broad powers as to the conduct of elections for federal office, a fortiori they certainly have them, if they choose to exercise them, as to elections held for state and local offices. Therefore, Texas has the power to control the disposition of contests over elections to its state and local offices.
 
 
 52
 "The Texas Statutes afford machinery for such a contest as part of their provision for both party nominations and final elections," Johnson v. Stevenson, 5 Cir., 1948, 170 F.2d 108, cert. denied 336 U.S. 904, 69 S.Ct. 491, 93 L.Ed. 1069.
 
 
 53
 It is elementary, of course, that United States District Courts have only such jurisdiction as conferred by an Act of Congress under Article III, Sec. 2 of the Constitution. Except for the narrow exception set forth in 28 U.S.C. Sec. 1344, (of which, more later) there is no Act of Congress which has conferred upon federal district courts jurisdiction to hear and decide, solely as an election contest, what candidate received a majority of the votes legally cast in an election for state or local office.
 
 
 54
 Even as to state courts, there is no inherent power to determine election contests, and such can become a judicial function only when, and to the extent, authorized by statute, 26 Am.Jur.2d, Elections, Sec. 329, Johnson v. Stevenson, supra.
 
 
 55
 On the other hand, in Bell v. Southwell, 5 Cir., 1967, 376 F.2d 659, the Court of Appeals for this Circuit did set aside a local election for Justice of the Peace and ordered that a special election be called to fill the office. The Court made no effort to decide the winner of the election. It voided the election. To use the words of the Court, Bell involved gross, spectacular, completely indefensible, state-imposed, state-enforced racial discrimination, with no effective judicial remedy prior to the holding of the election, 376 F.2d at 664. The situation described in such terms was that the voting lists for the election were segregated on the basis of race. Voting booths were segregated according to race, one booth being for white males, another for white women, and a third for Negroes. A number of qualified Negro women voters were denied the right to cast their ballots in the booth designated for white women. Election officials barred representatives of the Negro candidate from viewing the voting, while another was physically struck by an election official. Police allowed a large crowd of white males to gather near the polls, thus intimidating Negroes from voting. Women of the Negro race were arrested for refusing to leave the voting booth designated for white women.
 
 
 56
 The Court said that federal invalidation of a state election [to redress deprivation of the right to vote for racial reasons] is "a drastic, if not staggering" remedy and is "a form of relief to be guardedly exercised", 376 F.2d at 662.
 
 
 57
 We read the remedy in Bell as designed to match the enormity of the deprivations involved. The entire election had been conducted in such an unconstitutional manner as to be void.
 
 
 58
 Moreover, the Court did not embark on an effort to determine who had received a majority of the votes legally cast in the election, with a resultant declaration as to who won the race.
 
 
 59
 Interestingly enough, Mrs. Bell, one of the plaintiffs, who brought the federal court action as an original suit, had been a candidate in the disputed election, and it was admitted that there was no way, at the time the suit was filed, to challenge the election in the state courts.
 
 
 60
 See, also, Hamer v. Campbell, a case in which the plaintiffs sought relief prior to the election, 5 Cir., 1966, 358 F.2d 215.
 
 III
 The Complaint
 
 61
 Laborious as it may be, we consider it unavoidably necessary at this point to outline:
 
 Pertinent Portions of the Complaint
 III.
 
 62
 "The action of the Complainants is brought both in their own right and on behalf of all other electors who voted for James S. Collins, to enforce their rights under what are commonly called the Voting Rights Act of Congress of 1964 (42 U.S.C.A., Sec. 1971 et seq.) and 1965 (42 U.S.C.A. Sec. 1973, et seq.), and to protect their rights of suffrage, and of having their votes counted under the provisions of 42 U.S.C.A. Sec. 1983, and also to secure equal protection of the laws to their rights of suffrage, which are being denied them at this time, in contravention of Amendments XIV and XV of the United States Constitution. All of which shows jurisdiction in this Court.
 
 VI.
 
 63
 "After the trial in Cause No. 25,400, James S. Collins, vs. Jim Ammerman, in the District Court of Harrison County, Texas, the Court entered Judgment casting out as illegal 55 ballots, and declaring that of these one had been cast for the candidate James S. Collins, one had been lost, and 53 had been cast for the Defendant Ammerman, which changed the result of the election so as to show candidate James S. Collins the winner by 36 votes (J-3, S.T.-37).
 
 VII.
 
 64
 "All of the 53 ballots were illegal, and it is believed and alleged that the same were the result of a concerted effort on the part of those supporting the Defendant Ammerman in said Primary Election to stuff the ballot box with spurious ballots in his favor, but of a certainty the ballots of the 16 persons named in the Court's Finding of Fact No. 6 (S.T.-8) were spurious, and stuffed in the ballot box to swell the apparent vote of the Defendant Ammerman in view of the fact that neither the application or ballot carrier envelope were signed, and the persons did not mark their ballots. This can only mean that someone other than the voter marked these ballots and stuffed them in the box. Indeed, the trial Court found that the 53 votes were obviously manipulated in such a way as to leave no doubt that the votes did not represent the free decision of the voters (J-4); that mental incompetents were voted in this group (J-3).VIII.
 
 
 65
 "In addition to, and above those persons named in Finding of Fact No. 6, twenty ballots were cast where the voter failed to sign an application for an absentee ballot by mail, failed to authorize anyone to sign an application for said voter, and each of which voters were physically able to sign such application if they had desired to obtain a ballot (T.S.-4). The Complainants say that this conduct amounted to stuffing of the ballot box with spurious ballots purportedly voted for the Defendant Jim Ammerman by persons supporting said Defendant who procured ballots and voted them in the name of said voters.
 
 IX.
 
 66
 "That all of those 16 voters mentioned in Paragraph VII above are members of the Negro race, as were a vast majority of the 53 voters whose ballots were illegally cast. That the action of the supporters of the defendant Ammerman in preying upon the Negro race, and the illiterates thereof (Finding 9, S.T.-11), so as to deprive them of the right to cast a free ballot, on account of their race and color, violated the federal Voting Rights Acts of 1964 and 1965 and the XV Amendment to the Constitution of the United States of America.
 
 X.
 
 67
 "Aside from the ballot box stuffing above described, all of the 53 votes cast by absentee ballot in favor of the Defendant Ammerman were illegal by reason of flagrant violations of the provisions of the Texas Election Code (Art. 5.05, Vol. 9, V.A.T.S.) setting out the procedure and requirements for absentee voting. Some 14 of the 53 had no physical disability or sickness which would have prevented their attending the polls in person so as to have entitled them to cast an absentee ballot by mail (Finding 4, S.T.-6); some 31 in effect had their ballots voted for them when they were physically able to write and to see, through 'assistance' in the marking of their ballots beyond the answering of the voter's question and naming the candidate (Finding 5, S.T.-7); some 25 failed to mark their ballots before a Notary Public or other person authorized to administer oaths (Finding 7, S.T.-9); the voters' registration card of some 12 did not accompany the application filed in the office of the County Clerk for absentee ballots by mail (Finding 8, S.T.-10); and some 9 were illiterate and failed to affix their marks attested to by two witnesses to the application or to the ballot carrier envelope (Finding 9, S.T.-9).
 
 XII.
 
 68
 "In the election contest suit described, Defendant Ammerman sought to have the ballots of some 152 voters declared illegal by reason of the fact that they had voted in a precinct where they did not reside (S.T.-32), reducing this number to some 109 for his final challenge. On the trial of the contest, and at the conclusion of the offer of testimony by the Plaintiff, the Court entered an order 'freezing the pleading', and stating that the ballot of each voter who voted in a precinct other than that of his residence would be cast out, because illegal under the provisions of Article 2.06 of the Texas Election Code (Vol. 9, V.A.T.S.). The Complainants whose names appear on the indicated list, in their own behalf, and on behalf of all other voters who voted in precincts where they did not reside, show that this law as interpreted by the Court denied each of such voters the equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution, in these respects:
 
 
 69
 "a) In addition to the persons named by the Defendant in the election contest as having voted in a precinct other than that of their residence, the Plaintiff added 83 by his proof (S.T. 30-31), and some 300 residents of Precinct 3 were shown to have voted in Precinct 3A (S.T. 15-28).
 
 
 70
 "b) On Motion to Reopen the election contest, it was shown that following said Primary Election, and upon recommendation of the Grand Jury, a specially deputized committee had made an examination of the registration list in the office of the Tax Assessor-Collector and discovered that some 1,900 persons eligible to vote in the May 2, 1970, Primary had been registered in and put on the voters list of a precinct where they did not reside, and that some 700 of such persons had, upon notification, come by the Registrar's office and had their registration cards changed.
 
 
 71
 "In these circumstances, the selection of some 109 out of some 500 voters who actually voted in a precinct other than that of their residence, and out of some 1,900 who were registered so to do, amounts to a disenfranchise, and a refusal to give to said 109 voters the equal protection of the law through discriminating against them as a small part of a far larger class of voters.
 
 XIII.
 
 72
 "The Complainants who are of the Negro race, in their own right, and on behalf of other members of the Negro race who are affected by the action of the Court described in paragraph XII, show that Defendant Ammerman sought to have the Court discriminate against them by reason of their race or color, in that the vast majority of the voters on said list of 152 voters were members of the Negro race, who were singled out for challenge on account of their race. [NOTE BY THE COURT: This occurred at the trial of the election contest, not at the election.]
 
 XIV.
 
 73
 "The Complainants show that to permit the certification of the name of the Defendant Ammerman as the nominee of the Democratic Party for County Judge of Harrison County, Texas, to remain valid, and to permit the preparation of a printed ballot for the General November Election with said Defendant thereon as the candidate of the Democratic Party for County Judge of Harrison County, Texas, would be to dilute the vote of the Complainants and all other voters who voted for James S. Collins, would violate the 'one person-one vote' rule, and have the consequence of depriving the Complainants and each and every one of said other voters of their rights of suffrage under the Constitution and Laws of the United States. It would result in the appearance of the ballot in the 1970 November General Election of the name of the Defendant Ammerman as the nominee of the Democratic Party for the office of County Judge of Harrison County, Texas, when in truth and in fact the Defendant did not receive a majority of the legal votes cast at said Primary Election (S.T.-37; J-1).
 
 The Prayer for Relief
 
 74
 "b) That the Court enter its mandatory order commanding the Defendants called Second Group, and each of them and their successors in office, to within five days of said order take all steps necessary and proper for the calling of a new primary election in order that the electors of Harrison County, who are members of the Democratic Party, may select the nominee of that Party for the office of County Judge of Harrison County, Texas, and that said Defendants canvass the results of said election and certify the name of the winner thereof as the nominee of the Democratic Party for said office.
 
 
 75
 "h) That Group One Defendants, and each of them and their respective successors in office be enjoined from ordering, issuing Writs of Election for, and giving notice of a General Election for the office of County Judge of Harrison County, Texas, until the primary election for the nomination of the Democratic candidate for the office of County Judge of Harrison County, Texas, (prayed for in Paragraph b) of this prayer) has been conducted, and the winner thereof certified by the proper election officer of Harrison County, Texas, under the orders of this Court.
 
 
 76
 "i) That Defendants Glenn Link, N.F. Shivers, K. Harold Brown, Doyle Curry and Jim Ammerman, County Clerk, Sheriff, Chairman of the Harrison County Republican Party, Chairman of the Harrison County Democratic Party and County Judge, respectively, of Harrison County, Texas, individually and in their official capacity as the Harrison County Election Board be enjoined from providing any election supplies to the presiding judges of the official election precincts of Harrison County, Texas, for the General Election for the office of County Judge of Harrison County, Texas until the primary election for the nomination of the Democratic candidate for the office of County Judge of Harrison County, Texas (prayed for in Paragraph b) of this prayer) has been conducted, and the winner thereof certified by the proper election officers of Harrison County, Texas, under the orders of this Court.
 
 
 77
 "j) And for general relief."
 
 IV
 Ammerman's Motion to Dismiss
 A. The Jurisdiction of the District Court
 
 78
 28 U.S.C. Sec. 1344 is the only Act of Congress conferring jurisdiction on a United States District Court in a state or local election contest (primary or general) to hear and decide the issue of who has received a majority of the votes legally cast.
 
 That section reads as follows:
 
 79
 "The district courts shall have original jurisdiction of any civil action to recover possession of any office, except that of elector of President or Vice President, United States Senator, Representative in or delegate to Congress, or member of a state legislature, authorized by law to be commenced, wherein it appears that the sole question touching the title to office arises out of denial of the right to vote, to any citizen offering to vote, on account of race, color or previous condition of servitude.
 
 
 80
 "The jurisdiction under this section shall extend only so far as to determine the rights of the parties to office by reason of the denial of the right, guaranteed by the Constitution of the United States and secured by law, to enforce the right of citizens of the United States to vote in all the States."
 
 
 81
 There were 127 plaintiffs in this federal court action but not one of them claimed that he was entitled to recover possession of any office [or nomination necessarily prerequisite to becoming a candidate for office, see Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944)]. These 127 plaintiffs, therefore, clearly lacked standing to invoke this statute.
 
 
 82
 Moreover, the complaint showed on its face that it presented no case in which "the sole question touching title to [the] office arises out of denial of the right to vote, to any citizen offering to vote, on account of race, color or previous condition of servitude".
 
 
 83
 Only two citizens of the Negro race had been denied the right to vote when they presented themselves at the polls. This, however, did not occur because they were black but because absentee ballots in their names were already cast. They simply denied the authenticity of those ballots, a question of state law.
 
 
 84
 As the complaint alleged, the State Court had already invalidated the fifty-five ballots allegedly cast in an illegal or irregular manner for and on behalf of Negro citizens.
 
 
 85
 The contest had then turned altogether toward state issues, that is, what to do about counting the votes of those who had voted outside the precinct of their residence, a violation of state law.
 
 
 86
 The plaintiffs must have understood that they had no case within the terms of 28 U.S.C. Sec. 1344, because they did not pray for the remedy which that statute provides. Instead, they asked for a new primary.
 
 
 87
 We hold that the District Court was clearly without jurisdiction to entertain this election contest under 28 U.S.C. Sec. 1344.B. Federal Court Intervention as to Issues of State Law
 
 
 88
 Since this local election contest had turned toward the legality of ballots cast outside the precincts of the voter, a violation of Texas law and obviously a state question, and since this issue was to govern the outcome of the contest, we must here point out that Federal Courts do not intervene in state election contests for the purpose of deciding issues of state law, if no federal constitutional question is involved. See Gilmore v. Greene County Democratic Party Executive Committee, 5 Cir., 1966, 370 F.2d 919, 920, in which, with reference to a local election contest, we said:
 
 
 89
 "[A] decision by the Alabama Supreme Court as to the meaning of the Alabama statutes dealing with the subject matter of this current appeal will be binding on this court, absent any federal constitutional question."
 
 
 90
 C. Setting Aside the Election and Ordering a New Primary
 
 
 91
 Ammerman moved for a dismissal of the complaint on the ground that it raised no substantial federal question.
 
 
 92
 From what has already been said, the plaintiffs really had no hope of retaining jurisdiction in the United States District Court unless they could present a substantial question under the Bell v. Southwell rationale, that is, that election had been conducted in a racially discriminatory manner of such character and magnitude as to render the election void.
 
 
 93
 The complaint contained no allegation of segregated voting lists, segregated voting booths, denial of poll watching, personal violence, arrests, or physical intimidation, such as prevailed in Bell.
 
 
 94
 The gravamen of the complaint was that sixteen spurious ballots were cast, that absentee ballots had not been covered by signed applications or witnessed as required by Texas law. It was alleged that these ballots were cast by or in the name of Negroes, but it is obvious that these ballots were due to be thrown out, whatever the race of the individual who had cast them or in whose name they had been cast. Before the filing of the action in the United States District Court, the Texas District Court had already invalidated these ballots. As already stated, only two Negroes were physically denied the right to vote, but not on account of their race.
 
 
 95
 We are thus reminded of our language in Hamer v. Campbell, 358 F.2d at 222:
 
 
 96
 "This action does not mean that we necessarily would set aside every election in which a substantial number of citizens have been denied the right to vote."
 
 
 97
 This is especially so, since the complaint charged that the allegedly racially discriminatory activities hereinabove described were violations of the laws of Texas, not countenanced or authorized by the State.
 
 
 98
 The decisive factor is that in its findings of fact, upon which the issuance of the preliminary injunction was based, the District Court made no reference to racial discrimination or to the denial of the franchise to any individual on account of his race. Instead, the Court found only the "possibility of fraud" which might dilute the votes lawfully cast, plus the possibility that the Texas Court of Appeals "might not" act in time to prevent the mootness of the pending appeal from the State District Court.
 
 
 99
 This leaves only the "dilution" argument, but if the court having jurisdiction eliminates the votes illegally cast then there is no way that such votes can "dilute" those which have been lawfully cast. It necessarily follows that the dilution contention in this case is wholly without merit.
 
 
 100
 We, therefore, hold that this litigation raised no substantial federal question and for that reason Ammerman's motion to dismiss the complaint should have been granted.V
 
 The Failure to Make Collins a Party
 
 101
 Collins contended in the state court that a new primary should be ordered. In his appeal to the Texas Court of Appeals he changed his contentions, claiming that the state district court should have found him to be the lawful nominee. He was not a plaintiff and had not been named a defendant in the federal court action.
 
 
 102
 This brings us to the decision of the Eighth Circuit in Bynum v. Burns, 1967, 379 F.2d 229. In that case, the plaintiff-appellant was claiming that she had been discriminatorily denied certification as a candidate in the general election (then past) for the office of Justice of the Peace in Lincoln County, Arkansas. The individual elected in the general election was not made a party to the litigation.
 
 The Eighth Circuit said:
 
 103
 "Of course, under certain circumstances, upon proof of unconstitutional discrimination, the court has the inherent equitable powers to order an election set aside and require a new election. However, even in an equitable proceeding, the court may not act when all the parties affected are not before the court or are not given the opportunity to be heard." 379 F.2d at 233.
 
 VI
 The Conclusion
 
 104
 In summary, under the facts and circumstances of this case, we hold:
 
 
 105
 1. The District Court had no jurisdiction of this case under the provisions of 28 U.S.C. Sec. 1344.
 
 
 106
 2. The facts alleged in the complaint, and found as facts by the District Court, raised no substantial question as to the exercise of jurisdiction under the rationale of Bell v. Southwell, supra, and similar cases.
 
 
 107
 3. The District Court should not have acted when Collins was not a party before the Court.
 
 
 108
 4. On the face of the complaint, the dilution argument was without merit.
 
 
 109
 5. The District Court, accordingly, should have dismissed the complaint.
 
 
 110
 6. We need not reach or discuss the actions taken or the judgment entered the following year in connection with the issuance of the permanent injunction, for which jurisdiction was based on retained jurisdiction.
 
 VII
 Epilogue
 
 111
 In the foregoing opinion we have discussed only a portion of the manifold arguments presented by able and diligent counsel for both sides. They have swept the legal floor clean of every particle of dust which might have been of help to themselves or unfavorable to the contentions of the opposition.
 
 
 112
 Hence, it may be well to note that we did consider the following items:
 
 
 113
 1. Since all the plaintiffs had voted they had no standing to bring a class action in behalf of any who allegedly had been denied the right to vote, Hamer v. Campbell, 5 Cir., 1966, 358 F.2d 215.
 
 
 114
 2. In the absence of a statute to the contrary, none but a candidate claiming to have been injured by illegalities therein occurring can contest the certified results of an election. No private person can bring such a contest on the pretext of "redressing a public wrong." See Butler v. Cumming, 86 S.W.2d 1090 (Tex.Civ.App., 1935); Walker v. Sliger, 218 Tenn. 657, 405 S.W.2d 471 (1966); McLavy v. Martin, 167 So.2d 215 (La.App., 1964). The Texas Statute, Art. 13.30, provides only for contests by "any candidate".
 
 
 115
 It is noted that in Bell v. Southwell, supra, a defeated candidate was one of the plaintiffs.
 
 
 116
 3. We have attached no legal significance to "what the Texas Court of Appeals might do", see Amalgamated Clothing Workers of America v. Richman Brothers, 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 (1955).
 
 
 117
 At any rate, we were of the opinion that the case should be decided on the points discussed in that part of the opinion which precedes the conclusions above announced.
 
 VIII
 Result
 
 118
 The judgment of the District Court is reversed. The case is remanded, with directions that the permanent injunction issued on May 27, 1971, shall be dissolved, the judgment below shall be vacated, and the complaint shall in all respects be dismissed.
 
 
 119
 Reversed and remanded, with directions.
 
 APPENDIX A
 
 120
 In The United States District Court For The Eastern District
 
 
 121
 of Texas Marshall Division
 
 
 122
 Roy Hubbard, Et Al v. Civil Action No. 1472
 
 Jim Ammerman, Et Al
 Filed: Sep. 29, 1970
 ORDER GRANTING PRELIMINARY INJUNCTION
 
 123
 The Defendant's, Ammerman, Motion to Dismiss this cause, having been heard before trial on September 25, 1970, was in all things overruled, to which Defendant Ammerman excepted.
 
 
 124
 Due notice having been given Defendant, the Plaintiffs' request for a Preliminary Injunction was then presented on the same date, and the Court having considered the verified Complaint and all instruments on file as exhibits, as well as having heard testimony from witnesses, and have considered the arguments of counsel and being fully advised in the premises, finds:
 
 
 125
 That from the opinion of the District Court of Harrison County, Texas, in Cause No. 25,400, James S. Collins v. Jim Ammerman, and evidence presented on this hearing, it appears that there is the possibility that fraud has so permeated the Democratic Primary Election for a nominee of the Democratic Party for the office of County Judge of Harrison County, Texas, as that the votes of persons who cast legal ballots may have been diluted.
 
 
 126
 There is also a distinct possibility that a decision of said Cause No. 25,400 on an appeal that has been taken to the Court of Civil Appeals for the Sixth Supreme Judicial District of Texas sitting at Texarkana, Texas, may not be disposed of until after said Cause has become moot.
 
 
 127
 The Court is of the opinion that unless Honorable Glenn Link, County Clerk of Harrison County, Texas, be restrained from placing the name of Honorable Jim Ammerman on the ballot for the General Election, as the nominee of the Democratic Party for the office of County Judge of Harrison County, Texas, the appeal of said election contest, No. 25,400, may not be finally determined, and further that the Plaintiffs would suffer irreparable injury unless a Preliminary Injunction be granted.
 
 
 128
 It is therefore ordered, adjudged and decreed that pending further Order of this Court, the Honorable Glenn Link, County Clerk of Harrison County, Texas, his Deputies, representatives and employees and successors be, and he and they are, hereby restrained and enjoined from printing or causing to appear on the ballot for the General Election of November, 1970, the name of Honorable Jim Ammerman as nominee of the Democratic Party for the office of County Judge of Harrison County, Texas, and from in any way placing anything on said printed ballot which pertains to the Office of County Judge of Harrison County, Texas.
 
 
 129
 It is also ordered, adjudged and decreed that the Defendants Glenn Link, N. F. Shivers, K. Harold Brown, Doyle Curry and Jim Ammerman, individually and in their official capacities as the Harrison County Election Board, their deputies, representatives, employees and successors, all be and they are hereby restrained and enjoined from providing any election supplies to the presiding judges of the official election precincts of Harrison County, Texas for the November, 1970, General Election for the office of County Judge of Harrison County, Texas, until further order of this Court, and that said parties individually and in the capacity named be enjoined from holding an election for the office of County Judge of Harrison County, Texas, in the 1970 General Election.
 
 
 130
 It is further Ordered, Adjudged and Decreed that pending the further order of this Court, each and every voter and elector participating in the General Election to be held in November, 1970 is hereby restrained and enjoined from writing in the name of the office of County Judge of Harrison County, Texas and the name of any person for such office on the ballot of the General Election of November, 1970 and all election clerks and judges are hereby restrained and enjoined from counting and making any return of write-in votes for such office in said election and the Commissioners Court of Harrison County, Texas is hereby restrained and enjoined from canvassing any purported returns from said election for such office and from certifying the results of any such returns as to said office.
 
 
 131
 It is further ordered, adjudged and decreed that this order shall be effective from and after 5:00 P.M., September 25, 1970.
 
 
 132
 Signed and Entered this 29th day of September, 1970.
 
 
 133
 (Signed) WM. WAYNE JUSTICE United States District Judge.
 
 
 134
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 PER CURIAM:
 
 135
 The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.
 
 
 
 [1]
 Art. 13.30 Contest of primary nominations
 (1) The district court shall have original and exclusive jurisdiction of all contests for nominations growing out of primary elections.
 (3) Any candidate desiring to contest the result of any primary election in which he was a candidate shall file his suit in the district court within ten days from the date of canvass of the results of the election by the state executive committee in the case of a state-wide office or a district office in a district which includes territory situated in more than one county, and within ten days from the date of canvass by the county executive committee in the case of a county or precinct office or a district office in a district which consists of only one county or part of one county. Process with a true copy of the petition or complaint attached thereto shall be served upon the opposite party as in other civil suits, except that the return day thereof shall be fixed by the district judge. If the contestee cannot be found within the county in which the contest is filed, service may be had upon the agent or attorney of the contestee, or by leaving the process with some person over the age of sixteen years at the usual place of abode or business of the contestee, or his last address. If service cannot be effected within three days in any of the above methods, service upon the contestee may be had by serving the county clerk in the county where suit is filed, and any candidate who files for a place on the ballot in the primary election shall thereby appoint such county clerk as his agent to receive service for him under the circumstances above set forth. If a candidate for a district office in a district which includes territory situated in more than one county files a contest in one or more counties without filing a contest in every county having territory within the district, the contestee shall have five days from the date of first service of process on him in the suit or suits filed by the contestant, in which to file a contest in such other counties of the district as he may desire to do. In a suit filed by a contestee under the authorization of the preceding sentence, the parties shall be designated, and the suit shall proceed, in the same manner as original contests filed under this Section. Nothing herein shall be construed to prevent the contestee in a pending suit from himself filing a contest as a contestant, within ten days from the applicable date of canvass, in the district court of any county having venue of the contest preceding.
 (4) The filing of the suit shall be immediately called to the attention of the district judge by the clerk of said court. If the district court be then in session, the judge thereof shall set the said contest for trial at a date not more than (10) days from the date of the filing of said contest. If the district court be not in session at said time, the judge thereof shall order a special term of said court to be convened not later than ten (10) days from the filing of such contest for the hearing of same, and in either case, the said contest shall have precedence over all other matters.
 (6) The contestee shall file his answer within five (5) days from the filing of such suit, but either party, or both, shall have the right to amend before announcing ready for trial and set up additional causes of action or matters of defense, as the case may be. Any further changes in the pleadings shall be within the sound discretion of the court.
 (9) Upon the trial of said cause, the court shall have full power and authority to hear and determine all matters and things necessary or proper to the determination of such election contest, including the manner of holding the election, any frauds or irregularities in the conduct thereof, or in the making of the returns thereof, illegal votes cast at said election or legal votes prevented from being cast, false calculations, certificates or returns, and to exercise all powers of the court, in order to fully inquire into and ascertain the true and correct result of such election, free from any fraud, irregularity or mistake.
 (10) In addition to the powers and authority heretofore granted to the district courts, where fraud or illegality is charged, if such charges of fraud or illegality be supported by some evidence, or by affidavit of reputable persons, and the ends of justice seem to require it, the court shall have authority to unseal and reopen the ballot boxes to determine controverted issues, and the court may recount, or under its direction cause to be recounted, the ballots cast in any or all precincts of the county to determine the true result of such election. In all such cases in which a reopening of ballot boxes is ordered, the court shall exercise all due diligence to preserve the secrecy of the ballots, and upon completion of such recount, the said ballot boxes with their original contents shall be resealed and redelivered to the county clerk.
 (11) When the District Court shall have decided the contest, unless notice of appeal to the Court of Civil Appeals be given and an appeal bond filed within five (5) days, the said Court shall certify its findings to the officers charged with the duty of providing the official ballot for the ensuing election for observance in the preparation of the ballot for that particular party. The trial Court shall further fix a time within which the record in the trial Court shall be filed in the appellate Court, and make all such other orders in the cause as in his discretion may be necessary and expedient in order to expedite such appeal.
 (12) In all contests for party nominations filed in the district courts under authority of this Act, either party thereto may appeal to the Court of Civil Appeals for that particular Supreme Judicial district, which appeal shall be advanced upon the docket of said court and shall have precedence over all other cases. Provided, that no appeal in such cases shall be dismissed as moot merely because of possible interference with the printing of the official ballot unless the appellant has been guilty of negligence in perfecting and prosecuting such appeal, but such appellate court shall retain jurisdiction of such appeal and expeditiously dispose of same. Upon decision of the appeal by the Court of Civil Appeals no motion for rehearing shall be filed except with approval of the court given within three (3) days after such decision. The Supreme Court of Texas shall have no jurisdiction to review any election contest filed under this Act by writ of error, certified question, or any other manner. Acts 1951, 52nd Leg., p. 1097, ch. 492 art. 208.