**1182**

Eddie GOODLOE, et al., Plaintiffs,

v.

The MADISON COUNTY BOARD OF
ELECTION COMMISSIONERS, et
al., Defendants.

Civ. A. No. J83–0843(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 21, 1984.

Jere Krakoff, Nausead Stewart, Lawyers' Committee for Civil Rights under Law, Jackson, Miss., for plaintiffs.

Bill Allain, Atty. Gen., W.D. Coleman, Deputy Atty. Gen., R. Lloyd Arnold, Sp. Asst. Atty. Gen., Jackson, Miss., John W. Christopher, J.R. Fancher, Jr., Canton, Miss., for defendants.

### ORDER AND MEMORANDUM OPINION

BARBOUR, District Judge.

This action was filed by the Plaintiffs on behalf of themselves and others similarly situated challenging the actions of the Madison County Board of Election Commissioners in their invalidation of approximately 250 absentee ballots in the November 8, 1983, general election in Madison County, Mississippi. It is admitted by the Defendants that there was not a case by case investigation into each of the absentee ballots, but rather the ballots were invalidated en masse because the election commissioners believed that the notary public was not present to properly notarize the absentee ballots.

Two of the Plaintiffs are unsuccessful candidates for the position of Constable. The other Plaintiffs are voters who cast absentee ballots in that election which were invalidated by the election board.

This suit is essentially in the nature of an election contest. The Plaintiffs ask this Court to require the election commission to make a case by case determination of which ballots were properly notarized and which were not.

The Plaintiffs allege jurisdiction over this action by virtue of 28 U.S.C. § 1443 and 28 U.S.C. §§ 2201 & 2202. The basis of this action is 42 U.S.C. § 1983 and 42 U.S.C. § 1973(a).

The Defendants have made a Motion to Dismiss on the basis that this Court lacks subject matter jurisdiction over this action. In addition, the Defendants have moved this Court to dismiss for failure of the Plaintiffs to state a claim upon which relief might be granted.

In disposing of these Motions it is necessary that the claims be divided into two categories: 1) the claims under Section 2 of the Voting Rights Act (42 U.S.C. § 1973(a)) and 2) the constitutional claims before this Court pursuant to 42 U.S.C. § 1983.

On December 29, 1983, this Court held a hearing on the Plaintiff's Motion for Preliminary Injunction. The testimony of witnesses was taken and the Court heard arguments of counsel. Additionally, this Court has before it information excerpted from depositions relevant to the events surrounding the general election for constable in District One of Madison County, Mississippi. This was introduced into evidence as Exhibit P-1. Exhibit P-2 introduced into evidence is a re-cap sheet showing the votes received by each of the candidates in the November general election. This tabulation shows that the two candidates for Constable District One were Michael I. McGowan and Eddie B. Goodloe, one of the Plaintiffs in this action. They received 2,713 votes and 2,533 votes, respectively. Accordingly, there was a 180 vote difference between the two candidates.

After the election was over the Madison County Board of Election Commissioners met to consider a challenge to the ballots notarized by Mildred Branch because they were not voted in the presence of the notary as required by statute, invalidated the ballots en masse and subsequently certified the election for Goodloe's opponent, McGowan. There was no ballot-by-ballot inquiry with regard to the Branch ballots.

The testimony of the witness at the hearing on preliminary injunction stated that he had voted his ballot in the presence of Mildred Branch as he had done since 1975. According to the deposition of J.D. Rasberry, the Circuit Clerk for Madison County and a Defendant in this action, the absentee ballots notarized by Mildred Branch were cast by black voters from District One of Madison County. (Rasberry deposition, p. 12). The Board of Election Commissioners met for approximately one week prior to reaching its decision with regard to this election.

■ The analysis of the Section 2 claim must begin with the text of the statute itself which states in relevant part:

No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color, ....

42 U.S.C. § 1973(a).

Sub-section (b) states that:

A. Violation of sub-section (a) of this Section is established if, based on the totality of circumstances, it is shown that the political processes leading to the nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by sub-section (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

There is little authority which this Court has found or has been cited dealing with the application of the Voting Rights Act to setting aside elections pursuant to Section 2. This is not an action pursuant to Section 5 where the "standard, practice or proce-

dure" was a change within the meaning of that section which the state or political subdivision failed to preclear. The allegation contained in this action is that the Board of Election Commissioners' invalidation of the ballots notarized by Mildred Branch constitutes a "standard, practice, or procedure" which resulted in the denial of the right to vote on the basis of race.

There are two cases which have come to the attention of this Court which deal with setting aside of an election in which the Voting Rights Act of 1964 was involved. *Toney v. White*, 488 F.2d 310 (5th Cir.1973) (en banc); *Hubbard v. Ammerman*, 465 F.2d 1169 (5th Cir.1972). In *Hubbard* the Fifth Circuit does not directly address the standard to be utilized in the situation where the plaintiffs request the court to set aside a state election on the basis of racial discrimination, but apparently based its decision on the constitutional claims and the standard announced in *Bell v. Southwell*, 376 F.2d 659 (5th Cir.1967). In *Toney v. White*, the Court specifically notes that the action was filed pursuant to the Voting Rights Act of 1965. That decision was largely involved with the question of the necessity of seeking pre-election relief where the opportunity was available. That case distinguished *Bell v. Southwell* and other cases. The case today may well be the "dragon's teeth" foreseen by Judge Gee writing separately in that case. *Toney v. White*, 488 F.2d at 317 (Gee, J. concurring in the result).

*Toney v. White* is readily distinguishable in that it involved a purge of voter rolls, an action which has taken on a notoriety for the potential it has for discriminating against Blacks in the electoral process. This case is, in contrast, an action the basis for which did not arise until after the election. There is no question but that the Plaintiffs could not have foreseen the actions of the Board of Election Commissioners and sought pre-election relief.

The law requires this Court to examine the alleged acts of the Defendants to determine whether their actions constitute a standard, practice or procedure within the meaning of Section 2 and if so, whether, under the totality of the circumstances, such constituted a violation of Section 2. *See Jones v. City of Lubbock*, 727 F.2d 364 (5th Cir.1984).

■ Pursuant to clear authority from the United States Court of Appeals for the Fifth Circuit, this Court must grant the Motion to Dismiss as to the Section 1983 claims which embody the constitutional counts. *Duncan v. Poythress*, 657 F.2d 691, 699 (5th Cir.1981); *Gamza v. Aquirre*, 619 F.2d 449, 453 (5th Cir.1980); *Hubbard v. Ammerman*, 465 F.2d 1169, 1176 (5th Cir.1972); *Bell v. Southwell*, 376 F.2d 659, 662 (5th Cir.1967). This Court finds that the actions of the Defendants do not constitute such gross, spectacular or wholly indefensible racial discrimination such as to justify the drastic remedy of setting aside this election. From the testimony which this Court has heard and the evidence which it has reviewed there was no purposeful or deliberate discrimination and the facts are simply not outrageous enough to justify federal intervention on the basis of the constitutional claims of the parties.

While the requisite showing under Section 1983 is not present in this case, namely intent which is implicit in the standard applied by *Gamza* and other cases, no such requirement is present in the Section 2 claim. *See Toney v. White*, 488 F.2d at 317 (Clark, J. dissenting). Accordingly the Section 1983 claims must be dismissed while the Section 2 claims shall be tried.

## PRELIMINARY INJUNCTION

The hearing in this case was on the Plaintiff's Motion for Preliminary Injunction. Under applicable law the Plaintiffs have not reached the point where they have convinced this Court of their likelihood of succeeding on the merits of this case. Additionally, the balancing of harm to the respective parties and the public policy factor weigh heavily in favor of denying the Motion for Preliminary Injunction. Accordingly, this Court having considered the Motion for Preliminary Injunction and determined that the Plaintiff has not carried

its burden to justify the granting of such, the same is denied.

In accordance with the above Order and Memorandum Opinion this Court grants the Motion to Dismiss as to the Section 1983 and constitutional claims but denies the Motions as they relate to the claims pursuant to Section 2 of the Voting Right Act. Furthermore, this Court denies the Plaintiff's Motion for Preliminary Injunction.

It is further ordered that this case be set for a trial on the merits of the Section 2 claim on September 24, 1984, in the Fourth Floor Courtroom in Jackson, Mississippi.