**Eddie GOODLOE, et al., Plaintiff,**

v.

**The MADISON COUNTY BOARD OF ELECTION COMMISSIONERS, et al., Defendants.**

Civ. A. No. J83–0843(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

June 6, 1985.

Jere Krakoff, Nausead Stewart, Lawyers' Committee for Civil Rights Under Law, Jackson, Miss., for plaintiff.

Bill Allain, W.D. Coleman, R. Lloyd Arnold, Jackson, Miss., John W. Christopher, J.R. Fancher, Jr., Canton, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This action was filed by Eddie Goodloe and Walter Johnson, unsuccessful constable candidates in the November 8, 1983 elections in Madison County, Mississippi. James Wells is also a Plaintiff, being an adult, black resident of Madison County. James Wells brings his claims on his behalf and on behalf of all others similarly situated.

The Defendants are the Madison County Board of Election Commissioners, the Registrar of Madison County, the Secretary of State of the State of Mississippi and the two successful candidates for the office of constable in Madison County, George Summerlin and Mike McGowan.

This Court held a hearing on December 29, 1983, and determined that the requested preliminary injunction should not issue pursuant to the Order and Memorandum Opinion issued by this Court on August 21, 1984. 590 F.Supp. 1182 (D.C.Miss.1984). That Order dismissed the claims of the Plaintiffs pursuant to 42 U.S.C. § 1983 and set for hearing the claims stated under Section 2 of the Voting Rights Act of 1965, 42 U.S.C.1973(a).

Pursuant to the stipulation of the parties entered September 26, 1984, this Court is requested to determine the merits of this action based on the stipulation and all evidence previously admitted in the December 29, 1983, hearing which includes depositions, written exhibits and the testimony of the Plaintiff, James Wells. There is no serious factual dispute concerning the events which transpired occasioning this lawsuit and the parties have expressly requested this Court to forego a hearing of this matter as it would add nothing to this Court's ability to resolve the issues presented. Accordingly, the following constitutes the findings of fact and conclusions of law with respect to this controversy.

On November 9, 1983, the Madison County Board of Election Commissioners met to certify the local elections which had been held the previous day. It was brought to the attention of the Board of Election Commissioners that four voters had submitted absentee ballots notarized by Mildred Branch which were marked when the notary was not present. Clearly, these ballots were obtained pursuant to *Miss.Code Ann.* § 23-9-605(2) (Supp.1984) which requires the elector to mail an appropriate application to the registrar. *Miss.Code Ann.* § 23-9-613 (Supp.1984) requires that an elector receiving an absentee ballot pursuant to subsection 2 of section 23-9-605 shall appear before an official authorized to administer oaths and mark the ballot in secret but in the presence of such an official. *See generally, Welch v. McKenzie,* 592 F.Supp. 1549, 1551-52 (S.D.Miss.1984).

A blanket challenge to all absentee ballots notarized by Mildred Branch, numbering approximately 250, was lodged as a result of the four affidavits by electors stating that they had not executed their ballots in the presence of the notary, Mildred Branch. It is admitted by the Defendants that virtually all of the absentee ballots notarized by Mildred Branch were cast by black voters residing within District One of the county. On November 15, 1983, the Board of Election Commissioners invalidated all of the absentee ballots notarized by Mildred Branch in the District One constable races and declared George Summer-

lin and Mike McGowan the winners in those races. The Plaintiff Johnson was defeated by Summerlin by a margin of 100 votes. The Plaintiff Goodloe was defeated by his opponent McGowan by a margin of 180 votes. These figures are the results certified by the Board of Election Commissioners which do not account for the Branch ballots which were voided. Both candidates, Goodloe and Johnson, are black. The Plaintiff elector Wales is also black. The above tabulation clearly shows that Goodloe and Johnson may have won the election had the Branch ballots not been invalidated by the Board of Election Commissioners. No case by case determination was made as to the validity of any of the absentee ballots notarized by Mildred Branch except for the four ballots with respect to which the Chancery Clerk had affidavits of the electors stating that their ballots had not been voted in the presence of the notary. No notification was given to any of the electors that their absentee ballots were questioned and no systematic determination was made regarding the questioned ballots. The Board of Election Commissioners did not interview the electors nor did they call Mildred Branch to inquire as to which ballots were voted in her presence.

The elections were certified, declaring McGowan and Summerlin winners of the two constable posts in District One of Madison County, Mississippi.

■ There is no indication that intentional discrimination played any role whatsoever in the decision made by the Board of Election Commissioners. They were faced with an administrative dilemma with respect to the challenged ballots. Their resolution to this problem was the invalidation of all ballots carrying the notary seal of Mildred Branch. This Court finds that this resolution was not reached with the purpose of undermining the democratic system of electing public officials nor with any intent to discriminate against the black candidates or voters involved.

In the previous Order and Memorandum Opinion issued by this Court it was determined that the constitutional claims brought pursuant to 42 U.S.C. § 1983 were to be dismissed. The reason as outlined in that opinion was the lack of any intentional discrimination. The Plaintiffs by their Motion to Amend filed August 30, 1984, point out that the analysis of this Court was under the equal protection rather than due process clause of the Constitution of the United States. The result is the same in this case under either analysis. The fundamental fairness of the electoral process was not seriously undermined by the method the Board of Election Commissioners chose to resolve the problem created by the Branch ballots. *See Duncan v. Poythress,* 657 F.2d 691, 700–704 (5th Cir.1981). What has confronted this Court is an unfortunate situation involving the confusion about and misuse of absentee ballots. The Board of Election Commissioners was faced with a difficult problem and chose an avenue which resulted in the effective disenfranchisement of votes without any clear indication of whether those votes were cast in accordance with state absentee balloting procedures or whether they were not so cast. This action is not one which undermines the fundamental fairness of the election process. This event did result in the denial of the right to vote to a large number of black citizens in District One. Additionally, the invalidation of these ballots by the Board of Election Commissioners may have resulted in the certification of the white candidates Summerlin and McGowan as winners in spite of the fact that the majority of the validly cast ballots were cast for the two black candidates who are Plaintiffs in this action, Goodloe and Johnson.

■ The states have broad power to regulate the conduct of both federal and state elections. *See generally, Roudebush v. Hartke,* 405 U.S. 15, 92 S.Ct. 804, 31 L.Ed.2d 1 (1972); *Oregon v. Mitchell,* 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970). This Court has specifically found with respect to the constitutional claims brought by the Plaintiffs that there has been no jeopardization of the integrity of

the electoral process. Nevertheless, this Court is faced with the more difficult question of whether pursuant to Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973(a) the actions of the Board of Election Commissioners in invalidating the Branch ballots resulted "in a denial or abridgment of the right ... to vote." 42 U.S.C. § 1973(a).[1] Section 2 on its face is broad enough to cover practices which are not permanent structures of the electoral system but nevertheless operate to dilute or diminish the vote of blacks. Where a practice is such that it involves a series of events or episodes the same factors used when assessing a permanent structural barrier are not necessarily involved. S.Rep. No. 417, 97th Cong., 2d Sess. 30, *reprinted in* 1982 U.S.Code Cong. & Ad. News 177, 207. The relevant inquiry is whether the practice before this Court operated to deny the minority an equal opportunity to participate and to elect candidates of their choice. *Id.*

It is the finding of this Court that the series of events leading up to and including the invalidation of the Branch ballots was a practice within the meaning of Section 2. *See Goodloe v. Madison County Board of Election Commissioners,* 590 F.Supp. 1182, 1184 (S.D.Miss.1984). This Court further finds that this practice operated to deny the black voters who cast these absentee ballots an equal opportunity to participate and elect candidates of their choice. Accordingly, a violation of Section 2 is found to exist in the failure of the Board of Election Commissioners to make a

case by case or otherwise rational as opposed to arbitrary determination of which ballots were properly voted. Consistent with this, this Court shall issue an injunction requiring the Board of Election Commissioners to convene and make a determination within 45 days of this date as to which of the absentee ballots notarized by Mildred Branch were properly cast by the electors, if any. While this Court shall enter judgment consistent with Rule 58, it retains jurisdiction for the limited purpose of issuing any orders which may be necessary to grant complete relief to the Plaintiffs should it be found that the result of the election is altered by counting the ballots, if any, validly voted for Goodloe and Johnson.

---

1. Section 2 of the Voting Rights Act as amended in 1982 states as follows:

   No voting qualification or prerequisite to voting or standard, practice or procedure shall be imposed or implied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in 1973(b)(f)(2) of this title as provided in sub-section (b) of this section.

   A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by sub-section (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: *provided,* That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

   42 U.S.C. § 1973.