**REVISED May 16, 2018**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 11, 2018

Lyle W. Cayce
Clerk

No. 17-60097

BILLIE FAYE KEYES; JOSHUA ALLEN; COURTNEY RENA FORTUNE; KARLI FORD MATTHEWS; SHELTON S. MATTHEWS,

> Plaintiffs - Appellees

v.

PHILIP GUNN; MARK BAKER; RICHARD BENNETT; CHARLES JIM BECKETT; BILL DENNY; THE MISSISSIPPI HOUSE OF REPRESENTATIVES,

> Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Mississippi

Before STEWART, Chief Judge, and JOLLY and OWEN, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal arises from an election contest in Smith County, Mississippi, which challenges the vote for a state legislative seat for District 79 in the Mississippi House of Representatives. The election resulted in a tie vote: 4,589 votes for each of the two candidates. Under established state procedures, the tie vote was resolved by drawing straws, and the winner took his seat. But not so fast. The loser of the straw-drawing contest had filed an election contest

No. 17-60097

before the Mississippi House of Representatives. In accordance with the established rules, House Speaker Philip Gunn appointed a special committee to hear evidence on the election challenge. After the election-contest hearing, the special committee and the House dispossessed the winner of the seat he had won in the straw-drawing contest and seated the loser, but only after disqualifying five affidavit ballots that had previously been accepted by the Smith County election commissioners. This turn of events meant that the election had not resulted in a tie vote after all.

Five voters, who alleged they had been disqualified, then sued the Mississippi House of Representatives, House Speaker Gunn, and four of the five members of the special committee, for violating their rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by rejecting their affidavit ballots and thus depriving them of their constitutional right to vote.

Because we conclude that this lawsuit presents a state election contest for a legislative seat, we hold that the district court lacked subject matter jurisdiction. We therefore reverse and remand to the district court with instructions to dismiss for lack of subject matter jurisdiction.

I.

On November 3, 2015, Mississippi held a general election, which included District 79's legislative seat in the Mississippi House of Representatives. District 79 includes all of Smith County, Mississippi.[1]

In Smith County, thirty people had voted by affidavit ballot. Smith County's election commissioners "duly investigated" all thirty and found that only nine of the thirty were qualified to vote. The official vote count by Smith

---

[1] District 79 also includes part of Jasper County, Mississippi.

2

No. 17-60097

County officials declared the election a tie between the incumbent Democrat candidate, Blaine "Bo" Eaton, and the Republican candidate, Mark K. Tullos. The result was "duly certified" to the Secretary of State of the State of Mississippi, who tabulated the result and submitted it to the legislative branch.

One week later, in accordance with Mississippi law, and in the presence of the Governor and the Secretary of State of Mississippi, Mr. Eaton drew the longer of two straws and was thus declared the winner. *See* Miss. Code § 23-15-605. Mr. Eaton was later sworn in and took his seat in the House when the Mississippi Legislature convened in January 2016.

The day before drawing straws, however, Mr. Tullos had filed an election contest in the Mississippi House of Representatives. In accordance with Section 38 of the Mississippi Constitution, House Speaker Philip Gunn appointed a five-member special committee to consider the election contest. *See* Miss. Const. art. 4, § 38 ("Each house shall elect its own officers, and shall judge of the qualifications, return and election of its own members."). That special committee included Representatives Mark Baker, Richard Bennett, Charles Jim Beckett, and Bill Denny, who are defendants in this case.

Following hearings and a 4-1 vote, the special committee adopted a resolution recommending that Mr. Tullos be seated. The resolution stated that the special committee had disqualified five of the nine affidavit ballots that previously had been approved and accepted by the Smith County election commissioners and the Secretary of State. The special committee did not say which five of the nine were disqualified, but its resolution stated that at least one reason for discarding them had been that the five voters were incorrectly counted by Smith County and the Secretary of State, because these voters had failed to make a timely written request to transfer their voter registration upon

3

moving to a different voting precinct.[2]  The House agreed with the special committee, voting 67-49 to unseat Mr. Eaton and declare Mr. Tullos the winner of the election.

Thus, five Smith County voters sued Speaker Gunn, four of the five members of the special committee,[3] and the Mississippi House of Representatives itself, under 42 U.S.C. § 1983, alleging that the defendants had deprived them of their right to vote and had violated their rights under the Equal Protection Clause of the Fourteenth Amendment.  The five voters—Billie Faye Keyes, Joshua Allen, Courtney Rena Fortune, Karli Ford Matthews, and Shelton S. Matthews—allege that they are among the nine affidavit-ballot voters whose ballots were approved by the Smith County election commissioners and the Secretary of State, and that they "believe" their affidavit-ballots were among the five later rejected by the special committee and the House.  Three of the five "suspect" that they were among those whose ballots were excluded for failure to move their registration to their new precincts.  All five plaintiffs state that they voted for Mr. Eaton.

In their complaint, the plaintiffs stated that they do not seek money damages, but "only such equitable and prospective remedy, including declaratory or injunctive relief, as the Court deems appropriate to redress the

---

[2] The special committee's resolution stated that the affidavit votes were thrown out because they involved voters who "moved their residence to a different voting precinct within the county, and yet, did not, more than thirty days prior to the election, make a written request of the Circuit Clerk to have their registration transferred to their new voting precinct." *See* Miss. Code § 23-15-13; *Rush v. Ivy*, 853 So. 2d 1226, 1234 (Miss. 2003) (noting "the clear requirements of Section 23-15-13 of the Mississippi Election Code that an elector who moves from one ward or voting precinct to another ward within the same municipality or voting precinct within the same county must make a written request to the appropriate registrar to transfer his or her registration to their new ward or voting precinct" (emphasis omitted)).

[3] The fifth member of the special committee, Representative Linda Coleman, is no longer a member of the House.  She is not a named defendant in this case.

violation of the federal constitutional rights of the Plaintiffs to equal protection of the law." Specifically, the plaintiffs requested "that the Court find that the actions of the Defendants in casting out affidavit ballots which these Plaintiffs and others lawfully cast . . . be found in violation of the Equal Protection Clause[;] that [their] votes be counted[;] that the [result of the straw-drawing] be recognized and validated by this Court and that [Mr. Eaton's] position in the Mississippi House of Representatives be restored unto him; that the Court declare the action of the Special Committee to be in violation of the Equal Protection Clause; and that the Court award reasonable attorney fees."

In the proceedings before the district court, the defendants moved to dismiss on various grounds, including legislative immunity, qualified immunity, Eleventh Amendment immunity, lack of subject matter jurisdiction under 28 U.S.C. § 1344, lack of Article III standing, and failure to state a claim. The district court rejected each of the defenses. Finding that it had jurisdiction to consider the plaintiffs' equal-protection claims under 42 U.S.C. § 1983, the district court denied the defendants' motions to dismiss. *See Keyes v. Gunn*, 230 F. Supp. 3d 588, 593–94, 598 (S.D. Miss. 2017). The defendants have appealed under the collateral order doctrine.

## II.

"The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quotation omitted). Thus, we must satisfy ourselves of the jurisdiction both of this court and of the district court.[4] The issue having

---

[4] We have appellate jurisdiction. As we have earlier noted, the defendants have raised defenses of Eleventh Amendment immunity, absolute immunity, and qualified immunity. The district court rejected each of these defenses. A district court's denial of these defenses is immediately appealable under the collateral order doctrine. *Will v. Hallock*, 546 U.S. 345, 350 (2006); *In re Deepwater Horizon*, 793 F.3d 479, 484–85 (5th Cir. 2015). We thus have appellate jurisdiction to entertain this appeal.

No. 17-60097

been properly raised by the defendants,[5] we thus proceed to examine whether federal courts have subject matter jurisdiction over this case before we consider anything further.

We review questions of subject matter jurisdiction de novo. *Jones v. United States*, 625 F.3d 827, 829 (5th Cir. 2010).

## III.

Congress determines the jurisdiction of the lower federal courts. U.S. Const. art. I, § 8; *id.* art. III, § 1; *Sheldon v. Sill*, 49 U.S. 441, 448–49 (1850). And Congress has restricted the subject matter jurisdiction of federal courts as it relates to election disputes. *See* 28 U.S.C. § 1344. If a civil action, such as

---

Ordinarily, a district court's rejection of a defense of lack of subject matter jurisdiction is not immediately appealable. *See Catlin v. United States*, 324 U.S. 229, 236 (1945); *Matter of Greene Cty. Hosp.*, 835 F.2d 589, 595–96 (5th Cir. 1988). Nevertheless, here, as we have noted above, we have established our appellate jurisdiction under the collateral order doctrine, and both parties have raised and addressed the issue of federal subject matter jurisdiction. Not only may the parties raise the issue of subject matter jurisdiction for the first time on appeal, *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004), but we also have an independent obligation to assure ourselves of our own federal subject matter jurisdiction before we may consider even any non-jurisdictional immunity defenses asserted in the election dispute, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." (quotation omitted)).

[5] The defendants raise three challenges to federal subject matter jurisdiction. First, they argue that there is no "case" or "controversy" under Article III of the Constitution because the named defendants have no power to grant any of the relief sought. *See Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc). Second, they argue that the Eleventh Amendment bars this suit and that the legal fiction recognized in *Ex parte Young*, 209 U.S. 123 (1908), does not apply. Third, they argue that the only statute authorizing federal courts to hear election disputes prohibits this suit. *See* 28 U.S.C. § 1344. In an effort to avoid unnecessarily expounding the Constitution, we choose to address statutory jurisdiction under § 1344. *See Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) ("[I]t is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.").

No. 17-60097

this one, is determined to contest the results of an election, then it must fall within the exceptions allowing federal jurisdiction under 28 U.S.C. § 1344.

Section 1344 provides:

### § 1344. Election disputes

The district courts shall have original jurisdiction of any civil action to recover possession of any office, except that of elector of President or Vice President, United States Senator, Representative in or delegate to Congress, or member of a state legislature, authorized by law to be commenced, wherein it appears that the sole question touching the title to office arises out of denial of the right to vote, to any citizen offering to vote, on account of race, color or previous condition of servitude.

The jurisdiction under this section shall extend only so far as to determine the rights of the parties to office by reason of the denial of the right, guaranteed by the Constitution of the United States and secured by any law, to enforce the right of citizens of the United States to vote in all the States.

*Id.* Although the arrangement of the wording is somewhat awkward, § 1344 is clear as it relates to this case: federal courts may not hear an election contest involving the office of a "member of a state legislature."[6]  *Id.*; *see Johnson v. Stevenson*, 170 F.2d 108, 110 (5th Cir. 1948) ("Sec. 1344 of Title 28 entitled 'Election Disputes' . . . expressly excludes disputes concerning the office of . . . [a] member of a State legislature. . . . The aim of the section is to enable the district court to interfere in elections only to the limited extent it prescribes and to exclude it altogether from interfering with the election of [the

---

[6] The legislative history of § 1344 supports our reading of the statute.  The enacting Congress intended to provide a limited federal forum to effectuate the Fifteenth Amendment but nonetheless to bar federal courts from hearing election disputes involving legislators. Senator Matthew Carpenter of Wisconsin, a critical supporter of what is now § 1344 and without whom the provision would not have passed, stated that § 1344's exception for legislative seats "is because the Congress and the Legislature are the exclusive judges of the qualifications and elections of their members."  Cong. Globe, 41st Cong., 2d Sess. 3563 (May 18, 1870).

enumerated offices]." (citations omitted)).  We have long held that an election contest within the meaning of § 1344 is any suit in which we are asked "to hear and decide the issue of who has received a majority of the votes legally cast." *Hubbard v. Ammerman*, 465 F.2d 1169, 1180 (5th Cir. 1972), *cert. denied*, 410 U.S. 910 (1973).

Accordingly, if a civil action, contesting the results of an election, cannot be maintained under the provisions of § 1344, then it cannot be maintained in a lower federal court.  "It is elementary, of course, that United States District Courts have only such jurisdiction as conferred by an Act of Congress.  Except for the narrow exception set forth in 28 U.S.C. § 1344 . . . there is no Act of Congress which has conferred upon federal district courts jurisdiction to hear and decide, solely as an election contest, what candidate received a majority of the votes legally cast in an election for state or local office."  *Id.* at 1176.

### A.

Thus, the issue is not whether § 1344 bars the district court's jurisdiction to decide a state legislative election dispute.  It plainly does.  The sole issue is whether this lawsuit presents an election contest.  On its face, it would certainly appear that there is little question but that this case constitutes an election contest between Mr. Eaton and Mr. Tullos as to who got the most votes legally cast and who of the two won the election in Smith County.

The plaintiffs, however, argue that their lawsuit should not be characterized as an election contest; instead, it must be conceptualized as a constitutional claim vindicating the disqualified plaintiffs' right to vote based on their right to equal protection under the law.  Although the rudiments of their claims are not pellucid, they seem to argue that of the nine affidavit ballots considered by the defendants, the five plaintiffs here, whose votes were disqualified, were not treated equally when compared to the four other affidavit ballots that were ultimately counted, thus unconstitutionally denying

the plaintiffs their right to vote.  The plaintiffs, assuming that they have an equal-protection claim, further argue, and the district court held, that "[a]n election contest is fundamentally different from an equal protection challenge." *See Keyes v. Gunn*, 230 F. Supp. 3d 588, 593 (S.D. Miss. 2017).  They argue that, whereas an election contest "seeks to determine which candidate 'received a majority of the votes legally cast,'" *id.* (quoting *Hubbard*, 465 F.2d at 1176), an equal-protection claim "examines whether the votes cast by the plaintiffs were subjected to treatment different from others similarly situated," *id.* (citing *Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012)).  The plaintiffs argue that because their complaint does not allege jurisdiction under 28 U.S.C. § 1344, but instead alleges jurisdiction over their constitutional claims under 28 U.S.C. § 1343[7] and 42 U.S.C. § 1983,[8] the federal courts have jurisdiction over this case.

---

[7] 28 U.S.C. § 1343 provides:

> (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: . . .
>
> > (3) To redress the deprivation . . . of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
> >
> > (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

[8] 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Our precedent, however, counsels us not to be lulled into accepting these arguments as an avoidance of the jurisdictional restrictions of § 1344. The voter plaintiffs in *Hubbard v. Ammerman*, as here, did not frame their suit under § 1344. 465 F.2d at 1180. Instead, like the plaintiffs in the case before us, they claimed federal jurisdiction over their claims under § 1983. *Id.* at 1172. They alleged that the defendants had stuffed the ballot boxes with forged absentee ballots of at least sixteen black voters, which deprived the black voters of their right to vote for the candidate of their choice, all "on account of their race and color, in contravention of the Voting Rights Acts and the Fifteenth Amendment to the Constitution." *Id.* at 1172–73, 1177–78. Notwithstanding the fact that the plaintiffs asserted their claims under § 1983 to enforce federal statutory and constitutional rights, we were not persuaded to call an election contest by a different name. Instead, we concluded that "28 U.S.C. § 1344 is the only Act of Congress conferring jurisdiction on a [federal court] in a state or local election contest (primary or general) to hear and decide the issue of who has received a majority of the votes legally cast." *Id.* at 1180. Thus, because the plaintiffs in *Hubbard* did not satisfy the statutory requirements for jurisdiction under § 1344, we held that federal courts were "clearly without jurisdiction to entertain this election contest under 28 U.S.C. § 1344." *Id.* Similarly, here, the perfunctory assertion of federal jurisdiction under § 1983 does not suffice to establish federal jurisdiction over this case.[9]

---

[9] The plaintiffs attempt to discredit *Hubbard* by relying on a quote from *Powell v. McCormack*, 395 U.S. 486, 516 (1969). But their point is misconceived. *Powell* did not involve an election contest, but instead whether to seat a congressman for misconduct. *See id.* at 489–93. Further, in *Powell*, the Supreme Court stated that "there is absolutely no indication that the passage of [§ 1344] evidences an intention to impose *other* restrictions on the broad grant of jurisdiction in [28 U.S.C.] § 1331." *Id.* at 516 (emphasis added). Thus, the *Powell* Court recognized that § 1344 does impose *some* restrictions on the grant of federal jurisdiction under § 1331.

*See id.*; *cf. Curry v. Baker*, 802 F.2d 1302, 1316 (11th Cir. 1986) ("Plaintiffs have attempted to recharacterize their [election contest] claims in constitutional terms. . . . Plaintiffs' claims are, in truth, the ordinary dispute over the counting and marking of ballots." (quotations omitted)); *Hutchinson v. Miller*, 797 F.2d 1279, 1285 (4th Cir. 1986) ("Plaintiffs' theories [under § 1983] in this case illustrate the ways in which a lawsuit such as this could intrude on the role of states and Congress to conduct elections and adjudge results."); *Gamza v. Aguirre*, 619 F.2d 449, 453–54 (5th Cir. 1980) ("If every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute, and the elaborate state election contest procedures . . . would be superseded by a section 1983 gloss. . . . Section 1983 . . . did not authorize federal courts to be state election monitors.").

### B.

As we have earlier said, the issue is whether this § 1983 suit presents an election contest, that is, a question of who won the most legal votes. If it does, the district court is bereft of jurisdiction and our analysis must stop here. In our view, there can be no doubt that this suit constitutes an election contest—pure and simple—in which § 1344 tells us that the federal district courts have no business.

---

Nor have we extended § 1344's bar to all cases involving elections. For example, we have adjudicated cases involving racial discrimination during an election. *See, e.g.*, *Bell v. Southwell*, 376 F.2d 659, 662 (5th Cir. 1967); *Hamer v. Campbell*, 358 F.2d 215, 222 (5th Cir. 1966). Those cases, unlike this case, fall cleanly within the narrow grant of jurisdiction in § 1344, which was enacted to effectuate the Fifteenth Amendment, because those cases involved egregious racial discrimination, and neither concerned an office specifically excluded by § 1344. *See Hubbard*, 465 F.2d at 1176–66 (discussing *Bell v. Southwell* and *Hamer v. Campbell*). Nor did the suits brought in *Bell* and *Hamer* require this Court to decide who won the state elections. *Id.*

No. 17-60097

To demonstrate the certainty of our conclusion, we recap the facts that embody the whole of this lawsuit. An election was held. It was determined by the local election commissioners to be a tie vote. A tie-breaking ceremony was lawfully conducted. The winner of the contested election was declared. But the tie-breaking ceremony did not end the contest. A contest was filed in the Mississippi House of Representatives. The election-contest provision of the Mississippi Constitution was employed. The purpose of the appointed committee was to determine who got the most qualified votes in the contested election. Thus, the special committee heard evidence concerning the disputed election and reported its conclusion to the House. The committee—and, ultimately, the House—determined who could or could not vote in the election. In making those decisions, they necessarily were asked to decide the proper and accurate number of votes for each candidate, that is, who won and who lost the disputed election. The facts speak for themselves.

Furthermore, from these facts, it is clear that we cannot resolve the plaintiffs' alleged equal-protection claim because the merits of such a claim can be resolved only by examining the eligibility of each of the disputed voters, in order to determine who was denied equal treatment. This scenario necessarily would determine the winner and loser in the election contest. *See Hubbard*, 465 F.2d at 1176. This conclusion is buttressed by the relief the plaintiffs sought in their complaint: that the plaintiffs' votes be counted and that, consequently, Mr. Eaton be restored to the seat in the Mississippi House of Representatives.

IV.

In sum, whatever name is attached to the plaintiffs' claim, the unavoidable outcome of litigating the claim determines who won and who lost a disputed election for a state legislative seat. And, as even the plaintiffs concede, the district court lacks subject matter jurisdiction to determine that

No. 17-60097

question. Accordingly, the judgment of the district court is REVERSED, and this case is REMANDED to the district court with instructions to DISMISS the complaint for lack of subject matter jurisdiction.

REVERSED and REMANDED.