# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 30, 2022

Lyle W. Cayce
Clerk

No. 21-30475

Jennifer Leonard,

*Plaintiff*,

*versus*

Tyler Martin; Wadena Insurance Company,

*Defendants—Appellees*,

*versus*

Joseph W. Turnipseed, M.D.; The Spine Diagnostic &
Pain Treatment Center,

*Interested Parties—Appellants*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CV-827

Before Jones, Haynes, and Costa, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

This appeal relates to a Fed. R. Civ. Pro. 45 subpoena issued to third party Dr. Joseph Turnipseed requiring him to perform patient record audits and generate data about how frequently he recommends a particular course of treatment. Turnipseed moved to quash the subpoena on undue burden grounds. The district court denied his motion to quash. He appealed. In the alternative, he sought a writ of mandamus ordering the district court to quash the subpoena. With misgivings about the district court's substantive ruling, we DISMISS Turnipseed's appeal for lack of jurisdiction and DENY his alternative petition for a writ of mandamus.

## I.

This is a run-of-the-mill personal injury lawsuit arising out of a car accident. Plaintiff Jennifer Leonard alleges that Tyler Martin rear-ended her when she stopped in traffic. She sued Martin and his insurer, Wadena Insurance Company, in Louisiana state court seeking damages for injuries she allegedly sustained during the accident. Martin removed the lawsuit to federal court based on the existence of diversity jurisdiction.

Turnipseed, an anesthesiologist and pain management specialist, treated Leonard for neck and back pain allegedly caused by the accident. Among other treatments, Turnipseed performed a cervical radiofrequency neurotomy on Leonard. A cervical radiofrequency neurotomy is a procedure done to reduce chronic back and neck pain that has not "improved with medications or physical therapy, or when surgery [is not] an option."[1] According to Turnipseed, Leonard responded favorably to the cervical neurotomy and he recommended that she undergo the procedure annually

---

[1] *Radiofrequency Neurotomy*, Mayo Clinic (Feb. 25, 2022), https://www.mayo clinic.org/tests-procedures/ radiofrequency-neurotomy/about/pac-20394931 (last visited April 12, 2022).

for the next five to six years.  These future treatments make up a large percentage of Leonard's life care plan and alleged damages.

The defendants dispute the medical necessity of those expensive, future treatments.  They suggest that Turnipseed frequently recommends annual cervical radiofrequency neurotomies over the course of several years but that few patients follow through with the treatments.  The subtext, of course, is that Turnipseed's recommendation is simply a means of inflating the amount of damages in personal injury litigation.  The defendants therefore subpoenaed Turnipseed and his medical practice, The Spine Diagnostic & Pain Treatment Center, under Rule 45, seeking: (1) all records of patients in the past ten years who Turnipseed recommended undergo cervical neurotomies for ten years, twenty years, and life; and (2) bills for services rendered and records produced in connection with (1).  The subpoena specified that all patient health information should be redacted.

Turnipseed moved to quash the original subpoena.  He argued that it was overly broad, unduly burdensome, and sought privileged information.  The magistrate judge granted his motion in part and denied it in part.  He agreed that the subpoena was overly broad because it requested the entirety of patient records and targeted patients that Turnipseed recommended cervical neurotomies for periods of ten years, twenty years, and life, even though Turnipseed only recommended that Leonard undergo annual neurotomies for five to six years.  The magistrate judge likewise agreed that the subpoena was overbroad in seeking ten years of data.

The magistrate judge, however, approved a narrower version of the subpoena that required production of only (1) the number of patients in the last five years that Turnipseed recommended get annual cervical neurotomies over the course of five to six years; and (2) the number of known patients who actually underwent the procedures.  That information is

No. 21-30475

sufficiently relevant, the magistrate judge reasoned, because it bears on Turnipseed's credibility.     Moreover, the magistrate judge rejected Turnipseed's objection, as he concluded that producing the information targeted by the narrower subpoena—raw numbers, rather than patient files—would not be unduly burdensome.

Turnipseed filed a Rule 72(a) motion to review the magistrate judge's ruling in the district court.  The district court held that the magistrate judge expressly considered the relevant factors—the scope of the information requested, the importance of that information, the burden to Turnipseed, and the privacy rights of Turnipseed's patients—and tailored his ruling accordingly and, as a result, did not clearly err.  Turnipseed appealed.  He contends that district court abused its discretion in allowing the discovery to go forward.

## II.

This court cannot reach the question whether the district court abused its discretion until we first "assure ourselves of our own federal subject matter jurisdiction." *Keyes v. Gunn*, 890 F.3d 232, 235 n.4 (5th Cir. 2018). We requested supplemental briefing addressing the basis for appellate jurisdiction to review an order denying a nonparty's motion to quash. Turnipseed posits that this court has jurisdiction under the collateral order doctrine.  Alternatively, Turnipseed suggests that the court may treat his appeal as a petition for a writ of mandamus.  Martin, by contrast, disagrees that we have jurisdiction and contends that, even if the court were to treat this appeal as a petition for a writ of mandamus, the criteria for mandamus relief are not satisfied.  We conclude that an order denying this nonparty's motion to quash is not reviewable under the collateral order doctrine and that, although we may treat Turnipseed's appeal as a petition for a writ of mandamus, he fails to meet the requirements for such extraordinary relief.

No. 21-30475

## A. Collateral Order Doctrine

With few exceptions not applicable here, appellate jurisdiction is statutorily confined to review of "final decisions." 28 U.S.C. § 1291. The archetypal final decision is one that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867, 114 S. Ct. 1992, 1995 (1994) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 633 (1945)). Nevertheless, the Supreme Court "has long given" § 1291 a "practical rather than a technical construction." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S. Ct. 1221, 1226 (1949). Section 1291 encompasses not only the final decisions that terminate an action, "but also a 'small class' of collateral rulings that, although they do not end the litigation, are appropriately deemed 'final.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106, 130 S. Ct. 599, 605 (2009) (quoting *Cohen*, 337 U.S. at 545-46, 69 S. Ct. at 1225-26).

To fit within the small class of immediately appealable collateral rulings, the order must "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019) (quoting *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009)). For an order to be appealable under the collateral order doctrine, the "justification for immediate appeal must . . . be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Mohawk Indus.*, 558 U.S. at 107, 130 S. Ct. at 605. Critically, the Supreme Court has repeatedly admonished lower courts that the collateral order doctrine must "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been

entered." *Digit. Equip. Corp.*, 511 U.S. at 868, 114 S. Ct. at 1996 (citation omitted).

An order is not "effectively unreviewable" just because it "may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment." *Digit. Equip. Corp.*, 511 U.S. at 872, 114 S. Ct. at 1998. The "decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Id.* (quoting *Will v. Hallock*, 546 U.S. 345, 352-53, 126 S. Ct. 952, 959 (2006)); *see also Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 202, 109 S. Ct. 1976, 1980 (1989) (Scalia, J., concurring) ("The importance of the right asserted has always been a significant part of our collateral order doctrine."). Generally, this is only the case "where the order at issue involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.'" *Midland Asphalt Corp. v. United States*¸ 489 U.S. 794, 109 S. Ct. 1494 (1989) (quoting *United States v. MacDonald*, 435 U.S. 850, 860, 98 S. Ct. 1547, 1552 (1978)). A court must make this determination "on a categorical basis, looking only at whether 'the class of claims, taken as a whole, can be vindicated by other means' than immediate appeal." *Martin v. Halliburton*, 618 F.3d 476, 483 (5th Cir. 2010) (quoting *Mohawk Indus.*, 558 U.S. at 107, 130 S. Ct. at 605).

Turnipseed posits that collateral order appeals are necessary to ensure effective review of orders requiring nonparty physicians to conduct patient audits and generate statistical materials. He claims that the only alternative means of review is to disobey the discovery order and risk being held in contempt; and risking contempt is an intolerable alternative for physicians, he suggests, because a contempt citation may have collateral professional consequences. Turnipseed makes this collateral-consequences assertion without providing any support. Moreover, he suggests that allowing this sort

of discovery will chill physicians' willingness to treat patients involved in litigation. Finally, Turnipseed points out that complying with similar patient-audit discovery orders will further overburden physicians. Turnipseed concludes that the justification for allowing immediate appeals far outweighs the usual benefits of deferring review.

A comparison of the types of orders that do and do not fall under the collateral order doctrine is instructive. On one hand, courts routinely allow immediate appeal from orders that reject absolute or qualified immunity, *Mitchell v. Forsyth*, 472 U.S. 511, 525-27, 105 S. Ct. 2806, 2815-16 (1985), deny a state's Eleventh Amendment immunity, *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141, 113 S. Ct. 684, 686 (1993), or, in the criminal context, deny a defendant's double jeopardy defense, *Abney v. United States*, 431 U.S. 651, 659, 97 S. Ct. 2034, 2040 (1977). Moreover, in the discovery context, this court allows immediate appeal of orders that unseal a nonparty's confidential business documents, *Vantage Health Plan*, 913 F.3d at 449-50, or allow discovery against a nonparty with substantial First Amendment implications, *Whole Woman's Health v. Smith*, 896 F.3d 362, 368 (5th Cir. 2018). Each of these cases implicates "some particular value of a high order" or "substantial public interest" that would be imperiled or destroyed if review were delayed until after entry of an archetypal final judgment. *Mohawk Indus.*, 558 U.S. at 107, 130 S. Ct. at 605 (quoting *Will*, 546 U.S. at 352-53, 126 S. Ct. at 959).

On the other hand, courts do not permit immediate appeal from orders denying motions to enforce a forum selection clause, *Lauro Lines*, 490 U.S. at 496, 109 S. Ct. at 1977, refusing to effectuate a settlement agreement, *Digit. Equip.*, 511 U.S. at 865, 114 S. Ct. at 1994, denying motions to disqualify counsel, *Firestone Tire*, 449 U.S. at 370, 101 S. Ct. at 671, or declining to apply the judgment bar of the Federal Tort Claims act, *Will*, 546 U.S. 345, 347, 126 S. Ct. 952, 956 (2006). Furthermore, cases are legion

that deny immediate appeals under the collateral order doctrine in an array of discovery contexts.[2]  Indeed, this court and every other circuit court hold that the collateral order doctrine does not provide jurisdiction over a nonparty's appeal from a discovery order because nonparties have alternative avenues for appellate review.  *A-Mark Auction Galleries v. Am. Numismatic Ass'n*, 233 F.3d 895, 898-99 (5th Cir. 2000) (holding that the court lacked jurisdiction over appeal from discovery order against nonparty because nonparty may disobey the order, be cited for contempt, and challenge the discovery order in appealing the contempt citation).[3]

Turnipseed's appeal falls decidedly into the latter category of cases. As a threshold matter, Turnipseed paints the relevant class of orders too narrowly.  Turnipseed posits that the relevant class is orders that require nonparty physicians to conduct patient audits and generate statistical materials.  Collateral-order theory, however, does not depend on such

---

[2] *See, e.g.*, *Mohawk Indus.*, 558 U.S. at 103, 130 S. Ct. at 603 (discovery order implicating attorney-client privilege); *Cunningham v. Hamilton Cty., Ohio*, 527 U.S. 198, 204 n.4, 119 S. Ct. 1915, 1920 n.4 (collecting cases); *United States v. Ryan*, 402 U.S. 530, 531-32, 91 S Ct. 1580, 1581-82 (1971) (order denying motion to quash subpoena); *Sealed Appellees v. Sealed Appellants*, 112 F.3d 173, 174 (5th Cir. 1997) (discovery order compelling production over attorney work-product objection); *see also* 15B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3914.23 ("[T]he rule remains settled that most discovery rulings are not final.").

[3] *See Ott v. City of Milwaukee*, 682 F.3d 552, 555 (7th Cir. 2012); *United States v. Acad. Mortg. Corp.*, 968 F.3d 996, 1006-07 (9th Cir. 2020); *Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1325-27 (11th Cir. 2016); *Corporacion Insular de Seguros v. Garcia*, 876 F.2d 254, 256-57 (1st Cir. 1989); *Nat. Super Spuds, Inc. v. New York Mercantile Exchange*, 591 F.2d 174, 177 (2d Cir. 1979); *In re Flat Glass Antitrust Litigation*, 288 F.3d 83, 88 (3d Cir. 2002)*; MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 122 (4th Cir. 1994); *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 444 F.3d 462, 471 (6th Cir. 2006); *In re Burlington N. Inc.*, 679 F.2d 762, 768 (8th Cir. 1982); *F.T.C. v. Alaska Land Leasing, Inc.*, 778 F.2d 577, 578 (10th Cir. 1985); *U.S. v. Anderson*, 464 F.2d 1390, 1391 (D.C. Cir. 1972).

"individualized jurisdictional inquir[ies]." *See Mohawk Indus.*, 558 U.S. at 107, 130 S. Ct. at 605 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S. Ct. 2454, 2460 (1978)). Thus, the class of orders should be defined at a higher level of generality. In our view, the class of orders at issue here is those denying a nonparty's motion to quash a subpoena on undue burden grounds. *Cf. Mohawk Indus.*, 558 U.S. at 108, 130 S. Ct. at 606 (defining the class of claims as "orders adverse to the attorney-client privilege").

Under this broader view, Turnipseed's contention that the relevant class of orders is effectively unreviewable falls apart. Where a district court denies a nonparty's motion to quash on undue burden grounds, the nonparty has several potential avenues of review apart from a collateral order appeal. For one, the nonparty may disobey the district court's order, be cited for contempt, and then challenge the underlying discovery order in appealing the contempt citation. *See A-Mark Auction Galleries*, 233 F.3d at 233. Indeed, the contempt route is broader for nonparties than it is for parties. Unlike a party, who may only appeal a criminal contempt citation, a nonparty may appeal either a criminal or a civil contempt order. *See Texas v. Dep't of Labor*, 929 F.3d 205, 209 n.9 (5th Cir. 2019). Alternatively, a nonparty may request that the district court certify a § 1292(b) appeal or, in extraordinary cases, seek a writ of mandamus. *Mohawk Indus.*, 558 U.S. at 110-11, 130 S. Ct. at 607. Finally, where, as here, the thrust of the motion to quash concerns the burdens of complying with the subpoena, a nonparty may comply and seek reimbursement for costs. 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3914.23 (citing *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364 (9th Cir. 1982)). If the district court denies those costs, the nonparty may immediately appeal. *Id.*

Because these alternative means of review exist, Turnipseed cannot show that collateral order appeals are necessary to ensure effective review of

No. 21-30475

orders denying motions to quash on undue burden grounds. Accordingly, this court lacks jurisdiction under the collateral order doctrine.

## B. Mandamus

Even though this court lacks jurisdiction under § 1291 to review the district court's order, a writ of mandamus may still be appropriate.[4] A writ of mandamus is "a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380, 124 S. Ct. 2576, 2586 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60, 67 S. Ct. 1559, 1559 (1947)). Mandamus is appropriate only where: (1) the petitioner shows a "clear and indisputable right to the writ"; (2) the petitioner has "no other adequate means to attain the relief he desires"; and (3) the court is "satisfied that the writ is appropriate under the circumstances." *Defense Distributed v. Bruck*, 30 F.4th 414, 426 (5th Cir. 2022) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81, 124 S. Ct. 2576, 2587 (2004)); *see also In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 (5th Cir. 2019). Although we are concerned that the district court may have erred in denying Turnipseed's motion to quash, Turnipseed nevertheless fails to demonstrate a clear and indisputable right to a writ of mandamus.[5]

---

[4] Although Turnipseed did not formally seek a writ of mandamus under Federal Rule of Appellate Procedure 21, this court may, in its discretion, treat an appeal as a petition for a writ of mandamus. *In re Deepwater Horizon*, 793 F.3d 479, 491 n.12 (5th Cir. 2015) (quoting *In re Grand Jury Subpoena*, 190 F.3d 375, 389 n.16 (5th Cir. 1999)); *see also Jefferson v. Delgado Cmty. Coll. Charity Sch. of Nursing*, 602 F App'x 595, 598-99 (5th Cir. 2015) (unpublished).

[5] In mandamus cases, this court often holds "that a district court erred, despite stopping short of issuing a writ of mandamus." *In re Dupuy Orthopaedics*, 870 F.3d at 347 n.4 (collecting cases).

No. 21-30475

Demonstrating a clear and indisputable right to a writ of mandamus "require[s] more than showing that the district court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion." *In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 290 (5th Cir. 2015). Rather, Turnipseed must show a "clear abuse[] of discretion that produce[s] patently erroneous results," *Lloyd's Reg.*, 916 F.3d at 290 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008)), or "exceptional circumstances amounting to a judicial usurpation of power," *In re Dupuy Orthopaedics, Inc.*, 870 F.3d 345, 350 (5th Cir. 2017) (quoting *Cheney*, 542 U.S. at 380, 124 S. Ct. at 2587). In other words, Turnipseed "must show not only that the district court erred, but that it *clearly and indisputably erred*" in denying his motion to quash. *In re Occidental Petroleum Corp.*, 217 F.3d 293, 295 (5th Cir. 2000).

Under Rule 45, a court must modify or quash a subpoena that subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv). To determine whether a subpoena presents an undue burden, this court weighs the following factors: "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Moreover, where a subpoena requests information from a nonparty, as it does here, the court must be sensitive to the nonparty's compliance costs. *Id.* In our estimation, two salient factors here, relevance and burdens, weigh in Turnipseed's favor.[6]

---

[6] Turnipseed does not seriously challenge the subpoena under the second, third, fourth, and fifth elements of the undue burden test articulated in *Wiwa*.

First, relevance.  For purposes of the undue burden test, relevance is measured according to Fed. R. Civ. Pro. 26(b)(1).  Under that rule, information is relevant if it "bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party."  *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (internal quotation omitted).  The defendants posit that how often Turnipseed recommends repeated cervical neurotomies for a period of five to six years and the number of patients that follow through with that treatment course bear on Turnipseed's credibility.  Such information could show, for instance, that Turnipseed regularly recommends recurring cervical neurotomies but few patients ever undergo treatment.  Turnipseed counters that the requested information has no bearing on his credibility.  He emphasizes that his records do not accurately reflect the number of patients that follow his recommended course of treatment.  For example, patients may undergo treatment at different facilities because of a change in residence or another facility's greater scheduling flexibility.  At best, he concludes, the information that he must produce will present a misleading view of his credibility.  We agree that, for the reasons Turnipseed articulates, the requested information is only tenuously relevant.

Second, the burden imposed.  The defendants' subpoena, as modified by the district court, requires Turnipseed to audit his patient records and generate new information about how often he has recommended repeated cervical neurotomies and how many of those patients underwent the procedures.  A Rule 45 subpoena may require a nonparty to produce "designated documents, electronically stored information, or tangible things in that person's possession, custody, or control."  Fᴇᴅ. R. Cɪᴠ. P. 45(a)(1)(A)(iii).  By the terms of the Rule, these are items that already exist.  Rule 45 does not contemplate a subpoena requiring a nonparty to analyze documents in the nonparty's possession and generate new

information.[7]    Accordingly, to the extent that the subpoena requires Turnipseed to do more than simply produce documents already in existence, it imposes an undue burden on him.

Finally, the cost of complying with the subpoena. Turnipseed alleges that complying with the modified subpoena would be costly and burdensome. Based on a sample review, Turnipseed estimates that it will take him approximately three hours to review twenty patient files. Further, he estimates that complying with the district court's order would require him to review about four hundred patient files, which if accurate would require at least sixty hours of work. At Turnipseed's typical $1,000/hour rate, the cost of complying with the subpoena is excessive, particularly because the amount in dispute here is only about $120,000. In our view, even if Turnipseed somewhat overstates the cost of compliance, it is nevertheless disproportionate to any value that the information has with respect to Turnipseed's credibility.

Based on the above-articulated circumstances, it appears that the subpoena, even as modified by the district court, imposes an undue burden on Turnipseed. Nevertheless, district courts are afforded wide discretion in discovery matters, and as the district court here found, the magistrate judge

---

[7] *See, e.g.*, *McGlone v. Centrus Energy Corp.*, No. 2:19-cv-2196, 2020 WL 4462305, at *3 (S.D. Ohio Aug. 4, 2020) (collecting cases); *Taylor v. Kilmer*, No. 18-cv-7403, 2020 WL 606781, at *3 (N.D. Ill. Feb 7, 2020) (same); *Mir v. L-3 Commc'ns Integrated Sys, L.P.*, 319 F.R.D. 220, 227 (N.D. Tex. 2016) (same); 9 James W. Moore et. al., Moore's Federal Practice § 45.10 (Matthew Bender 3d ed. 2021) ("A command to produce may be made only for documents, electronically stored information, or things already in existence; accordingly, although a subpoena may compel a person to *produce* a document or thing, it may not compel the person to *create* the document or thing in the first instance.").

No. 21-30475

purported to apply the relevant law.  Thus, Turnipseed fails to show a clear and indisputable right to the writ, and we must deny mandamus relief.[8]

## III.

For the foregoing reasons, Turnipseed's appeal is DISMISSED for lack of jurisdiction and his petition for a writ of mandamus is DENIED.

---

[8] Rule 45(d)(2)(B)(ii) states that, when a court orders a nonparty to comply with a subpoena over an objection, "the order must protect" the nonparty "from significant expense resulting from compliance."  In other words, Rule 45 requires a district court to shift a nonparty's cost of complying with a subpoena if those costs are significant. *In re Modern Plastics Corp.*, 890 F.3d 244, 252 (6th Cir. 2018); *Legal Voice v Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).  If, in fact, Turnipseed's cost of complying with the subpoena is significant, the district court should shift those costs to the defendants.  Given the value of Turnipseed's time and the number of patient files he may have to review, it seems almost certain that the cost of complying will be significant. *Cf. Legal Voice*, 738 F.3d at 1185 ("[W]e have no trouble concluding that $20,000 is 'significant'"); *Linder*, 251 F.3d at 182 (suggesting that even $9,000 may be sufficient significant to justify shifting costs under Rule 45(d)(2)(B)(ii)).

No. 21-30475

Haynes, *Circuit Judge*, dissenting:

I agree with much of the majority opinion's discussion, but not its conclusion. For example, the majority opinion correctly determines that the district court erred by denying Turnipseed's motion to quash a subpoena for an entirely irrelevant and overly burdensome request for documents. Unfortunately, it then holds that it is powerless to grant Turnipseed the relief to which it tacitly agrees he is entitled. That is where we differ. As a preliminary matter, I disagree as to the conclusion that we lack jurisdiction under the collateral order doctrine. But, even assuming arguendo we lack appellate jurisdiction, I conclude we have the authority to grant mandamus relief and Turnipseed is entitled to that relief from the district court's clearly and indisputably erroneous discovery order. I respectfully dissent.

I.

The majority opinion "decidedly" concludes that Turnipseed's claim is not reviewable on appeal under the collateral order doctrine. I'm not so sure. That determination turns on one question: whether Turnipseed's claim is "effectively unreviewable on appeal from a final judgment." *See Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019). Per the majority opinion, Turnipseed's claim is not effectively unreviewable because he actually "has several potential avenues of review." Majority Op. at 9. For one, Turnipseed can simply disobey the district court's order, be charged with contempt, and then appeal the contempt citation. The majority opinion is unpersuaded by the fact that this option forces Turnipseed to violate his code of ethics and put his license to practice medicine at risk.[1]

---

[1] The majority opinion's lack of concern about this issue seemingly stems from the erroneous conclusion that Turnipseed's adverse professional consequences claim lacks

No. 21-30475

I recognize that we have previously endorsed this path for nonparties who wish to challenge discovery orders. *See A-Mark Auction Galleries, Inc. v. Am. Numismatic Ass'n*, 233 F.3d 895, 898–99 (5th Cir. 2000). However, recognizing that "[t]hird parties have no power to control the course of litigation nor any influence over an appeal from a final judgment," we have also held that such an extreme avenue is not always required for nonparties. *See, e.g.*, *Vantage Health Plan*, 913 F.3d at 449–50; *Whole Woman's Health v. Smith*, 896 F.3d 362, 368 (5th Cir. 2018). In *Vantage Health Plan*, for example, we did not force the nonparty seeking review to first defy the court's order and face contempt because "incurring sanctions is risky." 913 F.3d at 449. More notably, in *Whole Woman's Health*, we concluded that the relevant discovery order was "effectively unreviewable" on appeal in part *because* it was directed at a third party. 896 F.3d at 367–68.[2] Our analysis in that case was replete with concern about the nonparty's inability to benefit from a party's appeal of a final judgment. *See id.* at 367–68, 375. That concern is mysteriously absent from the majority opinion's analysis here.

---

support given his brief discussion of the same. *See* Majority Op. at 7. But as a physician practicing in Louisiana, Turnipseed is governed by state law protecting against, inter alia, physicians engaging in "unprofessional conduct." *See* LA. REV. STAT. ANN. § 37:1261. Because the statute does not define "unprofessional conduct," Louisiana courts look to the Louisiana Rules of Professional Conduct governing "professional misconduct" of a lawyer for guidance. *Doe v. La. State Bd. of Med. Exam'rs*, 788 So. 2d 1234, 1239–40 (La. Ct. App. 2001) (citing La. R. Pro. Conduct 8.4(a)–(h)). Louisiana case law makes clear that failure to comply with a court order constitutes "professional misconduct" in violation of Rule 8.4(d) and can result in the suspension of a law license. *In re Robinson*, 819 So. 2d 280, 284–85 (La. 2002) (per curiam) ("A review of our jurisprudence of this court indicates we have considered an attorney's knowing failure to comply with the orders of a tribunal to be a serious professional violation."). Accordingly, Turnipseed's concern that he risks losing his professional license by violating the district court's discovery order is hardly unsupported.

[2] We also held that the standards of the collateral order doctrine were met because the case was "practically *sui generis* from the standpoint of the type of discovery sought and the issues raised by [the nonparty]." *Whole Woman's Health*, 896 F.3d at 368.

Tellingly, neither *Vantage Health Plan* nor *Whole Woman's Health* discusses (let alone cites) *A-Mark*, a fact the majority opinion overlooks.

The majority opinion concludes that *Vantage Health Plan* and *Whole Woman's Health* are different because they "implicate[] 'some particular value of a high order' or 'substantial public interest' that would be imperiled or destroyed if review were delayed." Majority Op. at 7–8. Stated differently, the importance and sensitivity of the potentially discoverable material qualified the orders for immediate appellate review and excused the third parties from being required to defy the orders and seek contempt. *See Vantage Health Plan*, 913 F.3d at 449; *Whole Woman's Health*, 896 F.3d at 368. But in *Vantage Health Plan*, we questioned "whether third-party status alone, absent some constitutional or other issue that calls into question the 'general familiarity of courts with standards governing [the dispute],' may suffice to invoke the collateral order doctrine." 913 F.3d at 450 n.2 (alteration in original) (quoting *Whole Woman's Health*, 896 F.3d at 368).

Importantly, the Supreme Court case that took us down this path was about a *party* appealing a discovery order as a collateral order, noting the general rule that "a party is entitled to a single appeal." *See Mohawk Indus. v. Carpenter*, 558 U.S. 100, 101, 106 (2009). But no one argues that Turnipseed has "an appeal" in this case; even Martin does not claim that. In the "ordinary case" between parties there can be dozens of discovery disputes and rulings, and the Supreme Court understandably (and correctly) did not approve of a back and forth between the district courts and the appellate courts over these issues. But this is not the situation here where a non-party was ordered to create documents.

Even if *Mohawk*'s general rule applies across the board, in my view, the majority opinion's holding here does implicate a high order—it requires a licensed professional to violate his code of ethics (which requires following

No. 21-30475

court orders). Our core as judges is ethics: would we think it is okay to violate our rules of ethics to protest an order as a non-party in a case? Would we want to throw our positions and our reputations as highly ethical judges out the window just so we could appeal a completely erroneous order? I cannot agree with that notion.

In addition to that point, forcing physicians to perform burdensome patient population audits that yield information immaterial to an underlying litigation—and potentially chilling physicians' willingness to treat patients involved in litigation—implicates a "value of a high order" and a "substantial public interest" particularly in this pandemic era where doctors are being placed to the test every day. *See Mohawk*, 558 U.S. at 107 (quotation omitted). At the very least, it seemingly calls into question district courts' "general familiarity" with the standards governing the scope of permissible discovery from third party physicians.[3] In any event, we have not foreclosed the possibility that third-party status alone, in certain circumstances, is enough to invoke the collateral order doctrine. *See Vantage Health Plan*, 913 F.3d at 450 n.2. Forcing Turnipseed to defy the discovery order, violate his code of ethics, spend wasted time on an improper order, and risk losing his medical license is an extraordinary and unacceptable result. I accordingly urge that the circumstances present here warrant immediate appealability.

## II.

For this section I will assume arguendo that we do not have appellate jurisdiction under the collateral order doctrine. In that circumstance, given that the untenable disobey-and-seek-contempt route is the only path forward

---

[3] A motion to quash a discovery order is a routine district court ruling. However, no circuit court has yet to opine on whether *this type* of information from a treating physician is discoverable.

for an appeal, then a writ of mandamus is all the more appropriate here, as Turnipseed is left without "adequate means to attain relief." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318 (5th Cir. 2008) (en banc); *see also* 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3935.3 (3d ed. Supp. 2022) ("Writ review, indeed, may be specifically justified on the ground that the alternative of disobedience and contempt is not a suitable or adequate remedy.").

I recognize that the writ is an "extraordinary remedy" and that its requirements are difficult to satisfy. *See In re Volkswagen*, 545 F.3d at 311. But the writ's high hurdles "are not insuperable." *Id.* (quotation omitted). Indeed, a writ of mandamus is a useful "safety valve for promptly correcting serious errors." *Mohawk Indus.*, 558 U.S. at 111 (internal quotation marks, citation, and brackets omitted). That's especially true where, as here, "unfettered discovery" that "otherwise might elude appellate review" is an overwhelming burden. *See generally* Wright & Miller § 3935.3. *Cf. In re Burlington N., Inc.*, 822 F.2d 518, 522 (5th Cir. 1987) ("[T]he difficulty of obtaining effective review of discovery orders, the serious injury that sometimes results from such orders, and the often recurring nature of discovery issues support use of mandamus in exceptional cases."). It seems clear that the order in question is "truly irremediable on ordinary appeal." *See, e.g., In re A&D Ints., Inc.*, 33 F.4th 254, 256 (5th Cir. 2022), *pet. for reh'g en banc filed*, May 17, 2022.

The majority opinion concedes that the discovery order at issue here is both irrelevant and unduly burdensome, but nevertheless concludes that Turnipseed has failed to show a clear and indisputable right to the writ because "district courts are afforded wide discretion in discovery matters" and the magistrate judge here "purported to apply the relevant law." Majority Op. at 14. But a district court's discretion is not unlimited, *see*

*Munoz v. Orr*, 200 F.3d 291, 305 (5th Cir. 2000), nor is it a talisman precluding otherwise appropriate mandamus relief, *see In re Volkswagen*, 545 F.3d at 311–12. Mandamus is warranted when the circumstances demand as much.[4]

In *In re Volkswagen*, for example, our en banc court granted a writ to review a district court's forum non conveniens transfer even though "[t]here [is] no question" that "district courts have broad discretion in deciding whether to order a transfer." *Id.* at 307, 311 (internal quotation marks and citation omitted). Despite that discretion, we concluded that a writ in that case was appropriate because the "district court's errors resulted in a patently erroneous result." *Id.* at 318–19.

That is true here as well. The majority opinion outlines the problems with the discovery order, *see* Majority Op. at 12–14, so I merely reemphasize the major issues. I start with the discovery order's complete lack of relevance. Defendants argue that the number of patients who follow through with Turnipseed's recommended treatment bears on his credibility. But a doctor's credibility turns on whether a recommended treatment plan works, not on whether a patient decides to follow it. A person's decision not to quit smoking or their refusal to eat healthy and exercise doesn't mean their doctor's recommendation to do so is unsound; it just means that (for a myriad of potential reasons) the person has trouble quitting smoking or opts not to eat healthy and exercise.[5]

---

[4] I deeply respect the work of magistrate and district judges, and I recognize and appreciate the amount of work that has to be expended on discovery issues. While most of what they do is well within discretion, the reality is that mistakes, including severe ones, can be made, and that is what we are addressing here.

[5] Turnipseed lists other reasons why a patient may not undergo a recommended treatment—a patient may have limited financial resources and may not be able to afford the procedure; or the patient may have developed a more pressing health concern. There are

No. 21-30475

The magistrate judge inexplicably concluded otherwise, asserting that "other courts" have recognized the relevance of such information. Those "other courts," however, are two district courts that issued unpublished orders discussing topics only tangentially related to the relevant inquiry. In *Fusco v. Levine*, No. 16-cv-1454 (W.D. La. Feb. 21, 2019) (order denying motion to quash), for example, a magistrate judge considered a subpoena issued on a nonparty treating physician seeking a wide array of statistical information concerning his treatment of other patients. *Id.* at 2–3. But the relevant motion to quash was dismissed for procedural reasons. *Id.* at 10. The magistrate judge opined (in dicta) that the requested information could be "*potentially* relevant" to the doctor's credibility but also stated that "the number of procedures undergone by other patients is not, in and of itself, directly relevant to plaintiff's need for future procedures." *Id.* Importantly, the *Fusco* court never decided if the information was discoverable—the case settled shortly after the order issued.

Furthermore, in *Chauppette v. Northland Insurance Co.*, No. 08-4193, 2009 WL 3447291, at *1 (E.D. La. Oct. 21, 2009), a magistrate judge stated that a motion to quash a subpoena and limit it only to "areas involving the plaintiff, her medical bills, and her medical treatment" swept too broadly. *Id.* But the magistrate judge concluded the relevant information was the nonparty physician's financial interest arising from his previous relationship with plaintiff's counsel, as fees earned by experts in previous cases speak to credibility and possible bias. *Id.* Those facts are inapplicable to the instant matter. In short, the magistrate judge's conclusion here regarding the

---

also valid reasons why a patient might not undergo the procedure with the recommending physician—they may have moved to a different city or been referred to another provider.

relevance of the requested materials—supported only by irrelevant, unpublished, and non-binding authority—was clearly erroneous.

In terms of the burden this discovery order places on Turnipseed, I emphasize that a Rule 45 subpoena requires a nonparty to "produce designated documents, electronically stored information, or tangible things *in that person's possession, custody, or control*"—i.e., material that already exists. *See* FED. R. CIV. P. 45(a)(1)(A)(iii) (emphasis added). Conversely, the discovery order at issue here forces Turnipseed to audit his patient's files and *create new data* reflecting how often he recommends repeated cervical neurotomies and how often patients follow that recommendation. Such a request goes beyond the bounds of Rule 45. *See also* Majority Op. at 13 n.7. Worse, it does so for entirely irrelevant information.

In sum, I highlight two important conclusions. First, the flaws in the district court's discovery order and in its "decision making process" created a "patently erroneous result." *See In re Volkswagen*, 545 F.3d at 312 (internal quotation marks and citation omitted). Second, forcing Turnipseed to seek sanctions and risk his medical license for relief from that clearly erroneous order is an unacceptable obstacle that renders such relief "effectively unobtainable." *See In re Lloyd's Reg. N. Am., Inc.*, 780 F.3d 283, 289 (5th Cir. 2015). Taking these two considerations in tandem, we are left with the extraordinary circumstance where Turnipseed is "without adequate means to review" a clear and indisputable error. *See id.* at 288. Assuming arguendo that we cannot hear this case as a collateral order and grant relief that way,

No. 21-30475

Turnipseed is entitled to a writ of mandamus, and I respectfully dissent from the majority opinion's conclusion to the contrary.[6]

---

[6] For the reasons articulated in this dissenting opinion, I am also "satisfied that the writ is appropriate under the circumstances." *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 381 (2004).